# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 77

### APRIL TERM, A.D. 2013

### June 21, 2013

ORO MANAGEMENT, LLC,

Appellant
(Plaintiff),

v.

No. S-12-0223

R.C. MINERAL & ROCK, LLC,

Appellee
(Defendant).

*Appeal from the District Court of Fremont County*
*The Honorable Norman E. Young, Judge*

*Representing Appellant:*

William L. Miller, Miller and Fasse, P.C., Riverton, Wyoming.

*Representing Appellee:*

Joel M. Vincent, Vincent and Vincent, Riverton, Wyoming.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Justice.**

[¶1]    Appellant, ORO Management, LLC, ("ORO") filed suit against Appellee, R.C. Mineral & Rock, LLC ("R.C."), seeking to set aside a foreclosure sale.  The district court granted summary judgment in favor of R.C.  ORO challenges that decision in this appeal.  ORO contends that summary judgment was improper because R.C. failed to provide sufficient notice of its intent to foreclose, and because a genuine issue of material fact exists with respect to whether the published notice of foreclosure accurately stated the amount due under the loan.  We affirm.

## ISSUE

[¶2]   ORO presents a single issue for our review:

> Did the district court [err] in granting the Defendant/Appellee's Motion for Summary Judgment?

## FACTS

[¶3]    Between 2001 and 2003, Richard Mathey invested a total of $200,000.00 in ORO Management, LLC, and became a member of the LLC along with Zane Pasma, ORO's managing member.  After ORO ran into financial difficulties, Richard Mathey and his wife, Randy Mathey, jointly issued a series of three loans to ORO, totaling $527,125.00, which were secured by mortgages on "all of [ORO's] interest" in property co-owned by ORO and Ron Bixler.

[¶4]    In 2005, the property owned by ORO and Mr. Bixler was partitioned following a dispute between those parties.  In 2006, Richard Mathey withdrew as a member of ORO with the understanding that his capital contribution would be repaid.  In 2007 and 2008, ORO issued four $50,000 checks to Mr. Mathey.  The ledger line on the first check stated, "Richard Mathey . . . 1st dissolution installment."  The ledger line on the next three checks stated "Partner Equity Pmt – Richard M."

[¶5]    In 2010, the Wyoming Secretary of State administratively dissolved ORO, and Richard Mathey resigned as its registered agent.  The company remained "inactive" until after initiation of the foreclosure proceedings at issue in this case.  In September, 2011, the Matheys assigned their mortgages on the ORO property to Appellee, R.C. Mineral & Rock, LLC.  R.C. immediately began the process of foreclosing on the mortgages.  R.C. made private arrangements with Mr. Bixler to compensate him for his share of the partitioned property.

[¶6]    On September 21, 2011, R.C. sent notice of intent to foreclose via certified mail to ORO in Green River, Wyoming, at the last known address listed with the Wyoming

1

Secretary of State. R.C. also sent a courtesy notice to Zane Pasma at his last known address in Sheridan, Montana. However, Mr. Pasma's name was misspelled as "Plazma." The notice sent to ORO was returned and marked "unable to forward, return to sender," and the notice sent to Mr. Pasma was returned as "unclaimed." R.C. sent notice to ORO and Mr. Pasma (as "Plazma") again in October, but those notices were also returned as "unable to forward" and "unclaimed." R.C. did not send notice of the foreclosure to Mr. Bixler.

[¶7] R.C. proceeded to publish notice of the foreclosure for four consecutive weeks in the Lander Journal. A foreclosure sale was held on November 17, 2011, and R.C. purchased the property for $825,557.78, the amount claimed due on the mortgages. ORO made no attempt to redeem the property following the foreclosure.

[¶8] Prior to expiration of the statutory redemption period, ORO filed suit to set aside the foreclosure, claiming that R.C. failed to comply with Wyo. Stat. Ann. § 34-4-103 because it did not provide sufficient notice of its intent to foreclose to ORO or Zane Pasma, its managing member. In response to R.C.'s motion for summary judgment, ORO asserted that the foreclosure sale should be set aside for the additional reason that Mr. Bixler had not been provided with written notice of R.C.'s intent to foreclose. ORO sought to amend its complaint accordingly. ORO also claimed that the four $50,000 checks issued to Richard Mathey were intended as mortgage payments, and that, consequently, the published notice of foreclosure overstated the amount owed on the mortgage debt by $200,000.

[¶9] After holding a hearing on the summary judgment motion, the district court issued an order granting the motion. First, after noting that R.C. had not contended that Mr. Pasma was a record owner of the property, the court determined that Mr. Pasma was not individually entitled to notice of R.C.'s intent to foreclose and that ORO's argument regarding its sufficiency lacked merit. The court also determined that R.C. had complied with the statutory notice requirements with respect to ORO by sending notice via certified mail, return receipt requested, to the most recent corporate address listed with the Wyoming Secretary of State. Next, the court determined, based on an affidavit submitted by Ron Bixler, that Mr. Bixler had actual notice of the foreclosure proceedings.[1] Relying on *Walker v. McAnnany*, 802 P.2d 876, 879 (Wyo. 1990), the court held that strict compliance with the statutory notice requirements is unnecessary when a party has actual notice of an intent to foreclose. Finally, the court found that the checks issued to Richard Mathey unambiguously indicated that they were intended as

---

[1] The court noted that, in light of its conclusion with respect to Ron Bixler's actual notice of the foreclosure sale, ORO's request to amend its complaint to add the claim that the foreclosure should be set aside because R.C. failed to notify Mr. Bixler of the sale did not need to be addressed.

reimbursement for Richard Mathey's capital contributions to the LLC, rather than payments towards the Matheys' jointly held mortgages. ORO appeals from the district court's summary judgment order.

## *STANDARD OF REVIEW*

[¶10]  Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo. 2008).

> Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo. 2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id.*

*Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC*, 2008 WY 101, ¶ 8, 191 P.3d 125, 128-29 (Wyo. 2008).

## *DISCUSSION*

[¶11]  ORO contends the district court erred in granting summary judgment because R.C. failed to send notice of its intent to foreclose to Ron Bixler, a record owner of the property encumbered by the mortgages.[2]  Relying on *Ulery-Williams, Inc. v. First Wyo. Bank, N.A.-Laramie*, 748 P.2d 740 (Wyo. 1988), ORO asserts that R.C.'s failure to establish strict compliance with Wyo. Stat. Ann. § 34-4-103 renders the foreclosure sale void. ORO also claims that summary judgment was improper because there is a genuine issue of material fact with respect to whether the payments to Richard Mathey were intended as loan payments, as contended by ORO, or as reimbursement to Mr. Mathey for his capital contributions to the company, as contended by R.C.  Ultimately, ORO requests that we reverse the district court's order granting summary judgment, and remand to the district court with instructions that R.C. re-initiate foreclosure proceedings against ORO.

---

[2] ORO has abandoned its claims, asserted below, that Zane Pasma was entitled to notice of the foreclosure, and that R.C. did not provide sufficient notice to ORO.

[¶12] R.C. contends that failure to provide written notice to Ron Bixler is immaterial because R.C. gave Mr. Bixler actual notice of its intent to foreclose.[3] R.C. also claims there is no genuine issue of material fact with respect to the amount due under the loans to ORO. First, R.C. contends the parole evidence rule bars consideration of evidence extrinsic to the checks issued to Mr. Mathey. Second, R.C. contends that, even if the extrinsic evidence is considered, that evidence does not create a genuine issue of material fact. As discussed below, we agree that R.C.'s failure to send written notice to Mr. Bixler is immaterial in light of the fact that Mr. Bixler had actual notice of R.C.'s intent to foreclose. We also agree that ORO has failed to establish a genuine issue of material fact.

[¶13] The prerequisites to foreclosure are set forth in Wyo. Stat. Ann. § 34-4-103 (LexisNexis 2011). That statute requires notice to be served upon the record owner of the mortgaged property:

> **§ 34-4-103. Prerequisites to foreclosure.**
>
> (a) To entitle any party to give a notice as hereinafter prescribed and to make such foreclosure, it is requisite:
>
> . . .
>
> (iv) That written notice of intent to foreclose the mortgage by advertisement and sale has been served upon the record owner, and the person in possession of the mortgaged premises if different than the record owner, by certified mail with return receipt, mailed to the last known address of the record owner and the

---

[3] R.C. also claims that ORO does not have standing to challenge the foreclosure on the grounds that R.C. did not provide sufficient notice of its intent to foreclose to Mr. Bixler. As we have previously stated, "Standing is a legal concept designed to determine whether a party is sufficiently affected to insure that the court is presented with a justiciable controversy." *Jolley v. State Loan & Inv. Bd.*, 2002 WY 7, ¶ 6, 38 P.3d 1073, 1076 (Wyo. 2002). In order to establish standing, a plaintiff must demonstrate (1) a "concrete and particularized" injury, (2) caused by the conduct complained of, and (3) that "the injury will be redressed by a favorable decision." *Miller v. Wyo. Dep't of Health*, 2012 WY 65, ¶ 18, 275 P.3d 1257, 1261 (Wyo. 2012). R.C. concedes that "ORO has suffered an actual injury by losing its portion of the land at issue in the foreclosure." R.C. then attempts to argue, however, that ORO must demonstrate "third-party standing" because "ORO is attempting to assert a purported violation of W.S. § 34-4-103 on behalf of Mr. Bixler." We do not agree with that proposition. Indeed, ORO asserts that its own interests were harmed by R.C.'s failure to provide written notice to Mr. Bixler. Accordingly, because R.C. has conceded ORO's injury, and because its "third-party standing" analysis is inapposite, we will not address the issue further.

person in possession at least ten (10) days before commencement of publication of notice of sale. Proof of compliance with this subsection shall be by affidavit.

[¶14] In *Ulery-Williams*, 748 P.2d at 740-41, notice of intent to foreclose on property owned by Ulery-Williams, Inc. was sent to Earl and Edith Williams, officers of Ulery-Williams, Inc., at their home address. The notice made no reference to the corporation. Ulery-Williams filed an action to quiet its title to the mortgaged property, and the mortgage bank defended the action by asserting that even though notice had been erroneously sent to the Williams in their individual capacities, the corporation had actual notice of the foreclosure proceedings, which was sufficient to satisfy the requirements of Wyo. Stat. Ann. § 34-4-103(a)(iv). The district court agreed and granted summary judgment in favor of the bank after finding that the irregularity in service of the notice did not invalidate the proceedings and that Ulery-Williams, Inc. was properly notified of the intent to foreclose. *Id.* at 741. On appeal, this Court indicated that Wyo. Stat. Ann. § 34-4-103 requires strict compliance:

> It is the rule in Wyoming that "[m]andatory statutes must be obeyed, and courts have no right to make law contrary to that prescribed by the legislature. *In re Hartt's Estate*, 75 Wyo. 305, 295 P.2d 985 (1956)." *Thomson v. Wyoming In-Stream Flow Committee*, Wyo., 651 P.2d 778, 787 (1982). On their face, the provisions of § 34-4-103, W.S.1977, are mandatory. The nature of a mandatory statute is described appropriately by one text writer in this way:
>
>> " . . . [B]ut where [the statute] directs acts or proceedings to be done in a certain way and indicates that a compliance with such provisions is essential to the validity of the act or proceeding, or requires some antecedent and prerequisite conditions to exist prior to the exercise of the power, or be performed before certain other powers can be exercised, the statute may be regarded as mandatory." E. Crawford, The Construction of Statutes § 261 at 515 (1940).
>
> In an encyclopedia and in another text, the necessity of strict compliance with a notice requirement is emphasized.
>
>> "Whenever notice is necessary, it must appear that it was served on the proper person, and there must be strict compliance with a statute requiring service on a

5

particular person, so that service on another person is not sufficient." 66 C.J.S. *Notice* § 18 at 658 (1950).

"It is clear, of course, that there must be strict compliance with a statutory provision designating persons to whom notification is to be given." 1 M. Merrill, Merrill on Notice § 554 at 582 (1952).

*Id.* at 741-42. Ultimately, the Court held that the notice of foreclosure was insufficient: "The actual notice to the Williams, which was not furnished to them as representatives of the corporate appellant, does not suffice to satisfy the statutory requirement." *Id.* at 742. Importantly, however, the Court found the cases cited by the appellee involving actual notice to the mortgagor were distinguishable "because, in those instances, actual notice was acquired by agents of the corporation acting in that capacity." *Id.*

[¶15] The decision in *Ulery-Williams* was distinguished in *Walker*, 802 P.2d 876. In that case, Nauman-Walker, a general partnership consisting of Peter Nauman and Telford Walker, granted a mortgage on property located in Teton County, Wyoming to Betty McAnnany, as security for a loan. After the partnership defaulted on the loan, notice of intent to foreclose by advertisement and sale was sent to the Nauman-Walker partnership and to Peter Nauman and Telford Walker, by certified mail, return receipt requested, at their last known addresses. *Id.* at 877-78. The notice to Mr. Walker was sent to the address listed in a purchase agreement signed by Mr. Walker. It was returned with a notation that Mr. Walker had moved and left no forwarding address. *Id.* at 878. Ms. McAnnany subsequently foreclosed on the property securing her loan, and a deficiency judgment was entered against Mr. Walker. On appeal, we affirmed the deficiency judgment after finding that "the agreement in this case setting out appellant's address as the official address is the one which governs in the disposition in this case" and that Ms. McAnnany was not bound by the address appearing on Mr. Walker's motel registration. *Id.* at 879. We also relied on the fact that Mr. Walker had actual notice of the intent to foreclose:

Additionally, the record discloses that Nauman sent a copy of the notice he had received to Walker with a note attached inquiring whether Walker had "seen this." Appellant thus had actual notice from his partner.

. . .

There is no provision in W.S. 34-4-103(a)(iv), *supra*, that prohibits actual notice of intent to foreclose other than by mailing to the last known address of the record owner. We find in *Globe Mining Co. v. Anderson*, 78 Wyo. 17, 47, 318

6

P.2d 373, 385 (1957) where it was said that "[d]efendants, having knowledge of . . . claims, will not be heard to raise an imperfect recordation of certificates of location as a defect of which they can take advantage." The court went on to say that where there is an attempt in good faith "to comply with the law, courts are inclined to be liberal in construing his acts so as not to defeat his claim by technical criticism." *See also Western Standard Uranium Company v. Thurston*, 355 P.2d 377, 387 (Wyo. 1960) (quoting *In re Roberts' Estate*, 58 Wyo. 438, 133 P.2d 492, 499 (1943)) where a general rule of statutory construction is discussed wherein it was said that in construing statutes, "'[a] result which is . . . reasonable is sought.'" It was noted that there was no penalty for failure to abide by the statute.

As we visualize it, the purpose of such notice is to afford mortgagee an opportunity to bring the indebtedness current or take other appropriate action to avoid foreclosure. Even if appellee had a burden of making an extensive search for a different address for appellant, which we do not believe she had, appellant has not shown prejudice by his having actual notice rather than receiving a notice by certified mail. In the case before us, there was no prohibition against appellant having actual notice from his partner of appellee's intent to foreclose her mortgage and there appears no question about the good faith of appellee. Appellant had actual notice. It has been broadly said by the Wyoming Supreme Court that "[t]he law is almost elementary that whatever puts a party on inquiry amounts to 'notice.'" *Rodin v. State ex rel. City of Cheyenne*, 417 P.2d 180, 195 (Wyo. 1966).

*Id.*

[¶16] Based on the foregoing authority, we agree with the district court that "Strict compliance with the notice requirement of W.S. 34-4-103 is unnecessary when a party has actual notice of intent to foreclose." *Ulery-Williams*, 748 P.2d at 742, in distinguishing cases in which agents of the record owner have actual notice of intent to foreclose, suggested that strict compliance with Wyo. Stat. Ann. § 34-4-103 may not be required under all circumstances. That principle was affirmed in *Walker*, 802 P.2d at 879, where this Court held that nothing in Wyo. Stat. Ann. § 34-4-103(a)(iv) "prohibits actual notice of intent to foreclose other than by mailing to the last known address of the record owner." As noted in *Walker*, the purpose of providing notice "is to afford [the] mortgagee an opportunity to bring the indebtedness current or take other appropriate

7

action to avoid foreclosure." *Id*. In this case, Mr. Bixler had actual notice of R.C.'s intent to foreclose. Accordingly, we conclude that R.C.'s failure to send written notice of its intent to foreclose to Mr. Bixler does not provide a legal basis to set aside summary judgment.

[¶17] ORO also claims that summary judgment was inappropriate because there was a genuine issue of material fact as to whether the amount of the mortgage was overstated in the notice of intent to foreclose published in the Lander Journal. ORO's claim is based on an assertion, contained in an affidavit submitted by Mr. Pasma, that the four $50,000 checks issued to Mr. Mathey were intended as payments on the mortgage debt owed to Mr. and Mrs. Mathey. Mr. Pasma's affidavit provides, in relevant part, as follows:

> It is my understanding that those payments were to be applied toward the payment of the debt secured by [the] mortgages referred to above. Mr. Mathey directed the book-keeper for ORO Management, LLC on how to prepare the checks and I signed them. Checks were sent to me in bundles and I signed them and sent them back.

In contending that the statement contained in Mr. Pasma's affidavit creates a genuine issue of material fact, ORO relies on *Peterson v. Johnson*, 46 Wyo. 473, 28 P.2d 487 (1934), a case in which this Court set aside a foreclosure sale on the grounds that the published notice of foreclosure overstated the actual amount due upon the mortgage debt.

[¶18] The district court, in finding that Mr. Pasma's assertion did not create a genuine issue of material fact, distinguished the *Peterson* case in its order granting summary judgment:

> ORO contends that the checks were mortgage payments and that R.C. failed to account for those payments in calculating the amount due under the mortgages. Accordingly, ORO argues that the notice of foreclosure grossly overstated the amount due, which is grounds to set aside the sale pursuant to *Peterson v. Johnson*, 46 Wyo. 473, 28 P.2d 487, 491 (1934). However, that case was significantly different from the case at bar. Unlike the plaintiff in *Peterson*, ORO has made no effort to redeem the subject property, nor has it offered to do so. Further, the court in *Peterson* noted that it did not "hold that it is absolutely necessary to state with certainty the exact amount legally due; for a party under a mistake of law or fact, may honestly claim more than by law he would be entitled to, and if the other party is not shown to be prejudiced thereby, the

8

sale should not be disturbed." *Id.* ORO's reliance on *Peterson* is misplaced.

The court further concluded that the checks issued to Mr. Mathey were unambiguous, barring consideration of extrinsic evidence to interpret them, because "They were issued by ORO to Richard Mathey, and the ledger line notations clearly indicate that the payments were intended as something other than mortgage payments, to wit, 'partner equity payments' or 'dissolution payments.'" The court determined, however, that even if it was at liberty to consider extrinsic evidence, that evidence did not create a genuine issue of material fact:

> Even if the Court were to conclude that the checks were ambiguous and were to consider the extrinsic evidence submitted by the parties, [] there is no genuine issue of material fact as to whether the checks were intended as mortgage payments. R.C. submits the affidavit of [Richard] Mathey stating that he and Pasma discussed the checks and agreed that they were to be applied to Mathey's unsecured capital contributions to ORO. The checks were issued in 2007 and 2008, after Mathey withdrew from ORO, and the total amount of the payments matches the amount Mathey claims he invested in the company. The checks were made out to Mathey individually, not to the Matheys, who held the mortgages as tenants by the entireties. Aside from the four checks, ORO made no other payments to Mathey or the Matheys, prior to or after Mathey's withdrawal from the company.

> Aside from the assertions set forth in Pasma's affidavit, ORO presents no evidence that the checks were intended as mortgage payments. Pasma states that he lacks extensive formal education and does not understand contracts. He alleges that he "understood" the payments were to be applied toward the mortgages. He also "believe[s]" he made another payment of "approximately" $57,000.00 to Mathey, which was to be applied to the secured debt; however, ORO provides no documentation of this alleged payment. The party opposing summary judgment "must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings . . . , and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden." *Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶ 9, 148

P.3d 8, 12-13 (Wyo. 2006). In Wyoming, "[a] party's subjective intent is not relevant" in interpreting a contract or instrument. *Hunter v. Reece*, 2011 WY 97, ¶ 16, 253 P.3d 497, 501 (Wyo. 2011). Pasma's assertions are insufficient to raise a genuine issue of material fact on this issue. R.C. is entitled to summary judgment.

[¶19] We agree with the district court's reasoning on this issue, and we note that ORO, which devotes a single paragraph of its appellate brief to its claim that the dispute over the amount of the mortgage debt raises a genuine issue of material fact, has presented no reason to depart from the district court's analysis. Our review of the record confirms the district court's conclusion that the checks issued to Mr. Mathey were unambiguously intended as partner dissolution payments, as stated on the checks. Further, as noted by the district court, in contrast to the mortgagor in the *Peterson* case, ORO is unable to demonstrate that the alleged overstatement of the amount due under the mortgage resulted in prejudice. For the foregoing reasons, we conclude that ORO has not set forth facts sufficient to establish a genuine issue of material fact. The district court properly granted summary judgment to R.C.

[¶20] As a final matter, we must address R.C.'s request for attorneys' fees pursuant to W.R.A.P. 10.05. That rule provides that "If the court certifies there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case." R.C. claims that "There was no reasonable cause for ORO's appeal because it had conceded every argument made by R.C." We find no basis to conclude that ORO conceded the issues discussed above, or that there was no reasonable cause for this appeal. Accordingly, R.C.'s request for attorneys' fees is denied.

[¶21] The district court's order granting summary judgment in favor of R.C. is affirmed.

10