Carol Lee POULOS, Personal Representative of the Estate of Shawn Howard Poulos, Deceased, for and on Behalf of Michael George Poulos; Carol Lee Poulos; George Michael Poulos; Deborah Lee Poulos; and Steven Michael Poulos, Appellants (Plaintiffs),

v.

HPC, INC., a Delaware corporation; Home Petroleum Corporation, an Oklahoma corporation; Walter (Jack) Stephen; Norm Stephen; and Richard B. Kennison, Appellees (Defendants),

Mountain States Hot Oil Service, Inc., a Wyoming corporation; S.E.M. Corporation, an Oklahoma corporation, a Division of Valmont Oilfield Products Company, now known as Valmont Equipment Company (Defendants).

No. 87–284.

Supreme Court of Wyoming.

Dec. 8, 1988.

Gary L. Shockey of Spence, Moriarity & Schuster, Jackson, for appellants.

John James (argued), of James & James, Rock Springs, and Gary D. Stott and Robert G. Gilchrist of Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for appellees.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and BROWN, J. Ret.*

CARDINE, Chief Justice.

Appellant Carol L. Poulos, the personal representative of the estate of her deceased son, Shawn Poulos, appeals from the district court's order granting summary judgment to all appellee-defendants in this wrongful death action. The dispositive issue on appeal is whether a genuine issue of material fact existed on the question of culpable negligence.

We affirm in part and reverse in part.

On April 13, 1982, eighteen-year-old Shawn Poulos died while cleaning a "frac tank" at a well site outside Rock Springs, Wyoming. A frac tank is defined as "any portable or stationary, high volume holding vessel designed and constructed for use in separating, storing or temporarily holding materials used in or resulting from fracturing techniques in oil and gas exploration." 8 H. Williams & C. Meyers, Oil and Gas Law 378 (1987). "Fracturing" is a recovery enhancement technique defined as "[a] process of opening up underground channels in hydrocarbon-bearing formations, by force, rather than by chemical action such as acidizing. High pressure is hydraulically or explosively directed at the rock causing it to fracture." Id. at 379.

At the time of his death, Mr. Poulos was employed by Frac Tanks, Inc. (Frac Tanks), a company which rented frac tanks to oilfield operators and provided cleaning services for the rental tanks. Frac Tanks had two offices, one in Rock Springs and one in Evanston. The Rock Springs office was managed by appellee Jack Stephen, and his son, appellee Norm Stephen, took care of the Evanston office. Appellant Carol Poulos, Shawn's mother, was a secretary at the Rock Springs office.

The tank Shawn Poulos was cleaning on April 13, 1982, was one of several which Frac Tanks had rented to HPC, Inc. (HPC). The tanks had been used once, and they required cleaning before being used again. Frac Tanks usually cleaned the tanks at its shop, but for reasons of convenience and economy, Randy Richardson, completions foreman for HPC, asked Frac Tanks to clean the rented tanks on location.

On the morning of April 13, Richard Kennison, Shawn Poulos and Ed Golnitz arrived at the site. Golnitz was principally responsible for moving the tanks around the site, but he also had tank cleaning experience. Already present at the site were Leslie Fotheringham, who drove a hot oil truck for Mountain States Hot Oil, and Randy Richardson of HPC. Fotheringham's duties included heating the tanks and supplying warm water to the tank cleaners for spraying down the inside of the tanks. Richardson, as completions foreman at the well site, generally supervised the tank cleaning operation for HPC.

Kennison entered and cleaned the first tank. While inside the tank, he was so affected by fumes that he later told OSHA investigators that he was "worse than drunk." Richardson, observing Kennison's condition, told him to get out of the tank and get some fresh air. Golnitz testified that he finished cleaning the first tank.

Richardson was apparently concerned about Kennison's reaction to the fumes in the first tank, and he told Kennison not to have more than one man in a tank at one time, to switch off frequently and not to spend too much time in the tanks. He then left the site with other HPC personnel. Kennison entered the second tank and began washing it down, and Shawn Poulos followed. Shortly after they entered the tank, Ed Golnitz, who was looking into the tank, saw both men collapse. He and Fotheringham entered the rear hatch of the tank to rescue the downed men. They passed Shawn Poulos, who was sitting in the middle of the tank floor, apparently still conscious, and assisted Kennison, who was at the front of the tank and appeared unconscious. They managed to get Kennison propped up and placed his head in or near the front porthole. By the time they attempted to assist Poulos, Fotheringham and Golnitz were feeling the effects of the

---

* Retired June 30, 1988.

fumes. Fotheringham looked out the porthole, saw that Richardson had returned, and yelled to him for help. Richardson enlisted the assistance of two truck drivers to help lift Shawn Poulos out of the tank. By the time Poulos was removed from the tank, he had stopped breathing. Attempts at artificial respiration and CPR were unsuccessful. Poulos was taken by helicopter to Rock Springs, where he was declared dead.

On April 12, 1984, appellant filed this wrongful death action alleging, among other things, that appellees were liable as culpably negligent coemployees.[1] Appellees initially moved for summary judgment on September 6, 1985, and the court denied their motions. After further discovery, appellees renewed their motions, and the court granted summary judgment in their favor on the day before the scheduled trial. Appellant now appeals from the order granting summary judgment.

Appellant's claims against appellees are predicated on the culpably negligent coemployee provision of § 27–12–103(a), W.S. 1977, which at the time of the accident provided:

"The rights and remedies provided in this act [§§ 27–12–101 to 27–12–804] for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, or his employees acting within the scope of their employment *unless the employees are culpably negligent,* but do not supersede any rights and remedies available to an employee and his dependents against any other person."

Culpable negligence has been discussed by this court in several cases. Recently, in *Bryant v. Hornbuckle*, Wyo., 728 P.2d 1132, 1136 (1986), we said:

"In *Barnette v. Doyle*, Wyo., 622 P.2d 1349, 1362 (1981), we defined the term 'culpable negligence' as 'willful and serious misconduct.' We defined the term 'willful' in this context as ' "such as is done purposely, with knowledge—or mis-

conduct of such a character as to evince a reckless disregard of consequences." ' *Id.,* quoting *Hamilton v. Swigart Coal Mine,* 59 Wyo. 485, 143 P.2d 203, 206, 149 A.L.R. 998 (1943).

"The aggravating factor which distinguishes willful misconduct from ordinary negligence is the actor's state of mind. See Prosser and Keeton on Torts § 34 (5th ed. 1984). In order to prove that an actor has engaged in willful misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do harm. Id. State of mind, of course, may be difficult to prove. Accordingly, courts allow a party to establish that willful misconduct has occurred by demonstrating that an actor has intentionally committed an act of unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm will follow. Id."

■ Applying this definition to the present case, we agree with the district court's entry of summary judgment in favor of Jack Stephen and Norm Stephen, who were not present at the well site when the accident occurred. Appellant, in attempting to demonstrate their alleged culpable negligence, relies heavily on violations of OSHA regulations concerning safety training and equipment. While these asserted violations may constitute evidence of ordinary negligence, they do not demonstrate a state of mind consistent with culpable negligence, which requires knowledge or obviousness of a *high probability* of harm. Although both Jack Stephen and Norm Stephen were generally aware of a possibility of harm from tank fumes, there is no evidence to suggest that either man knew the degree of danger presented by the particular tank in which Shawn Poulos died. Because appellant's evidence, at best, merely demonstrates knowledge of *possible* harm, we affirm the district court's entry of summary judgment in favor of Jack and Norm Stephen.

■ We disagree, however, with the district court's conclusion that Richard Kenni-

---

**1.** Appellant's complaint also included a claim

against HPC, Inc., which was settled.

son could not be found culpably negligent. Appellant contends that Kennison was Shawn Poulos' supervisor at the well site and, with knowledge of a high probability of harm from the tank fumes, failed to take steps to ensure Poulos' safety. The record presents genuine issues of material fact regarding this claim.

One factual dispute concerns the question of whether Kennison was acting as an on-site supervisor who had the authority to make decisions on safety matters. Although Kennison and Jack Stephen denied that Kennison was Poulos' supervisor at the site, other evidence contradicts this assertion. Kennison had worked for Frac Tanks for a longer period of time than Poulos; he had more experience cleaning tanks; his salary was twice as great; he was a man in his forties, while Poulos was eighteen years old. Ed Golnitz testified that Kennison gave work instructions to Shawn Poulos and Golnitz at the cleaning site. When talking to OSHA investigators after the accident, Kennison told them that he was the supervisor on the tank cleaning job. This responsive evidence is sufficient to structure a genuine issue of fact.

Another factual dispute is whether Kennison's conduct rises to the level of culpable negligence. Appellees, relying on *Bryant v. Hornbuckle, supra,* argue that Kennison could not have been culpably negligent because, like the employee in that case, he exposed himself to the same danger which caused the harm to his co-employee. In *Bryant v. Hornbuckle,* however, the plaintiff failed to present evidence to show that the defendant was aware of the risk or that the risk was obvious. That cannot be said of the evidence in this case. The record suggests that when he entered the two tanks, Kennison became aware of the highly dangerous and harmful nature of the fumes contained in them. He admitted that the fumes in the first tank made him "worse than drunk," and he apparently encountered even stronger fumes in the second tank. The trier of fact could reasonably find a known or obvious risk presenting a high probability of harm. The question of Kennison's culpable negligence thus presents a genuine issue for trial, and we reverse the summary judgment entered in his favor.

Appellants raise the additional issue of whether it is unconstitutional to require a plaintiff to prove intent to do harm in order to show culpable negligence. We need not address this issue as the district court did not require a showing of intent to do harm in this case.

The summary judgments in favor of Jack Stephen and Norm Stephen are affirmed. The summary judgment in favor of Richard Kennison is reversed, and the case is remanded for further proceedings.