# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 127

OCTOBER TERM, A.D. 2013

October 11, 2013

HAROLD F. "BUTCH" VANDRE, JR.,
and CARMEN VANDRE, husband and
wife,

Appellants
(Plaintiffs),

v.                                                          S-13-0020

JASON KUZNIA and JARED "CUB"
SJULESTAD,

Appellees
(Defendants).

*Appeal from the District Court of Sublette County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellants:*

Nathaniel S. Hibben and Herbert K. Doby, Torrington, Wyoming.  Argument by
Mr. Hibben.

*Representing Appellees:*

Stephenson D. Emery of Williams, Porter, Day & Neville, P.C., Casper,
Wyoming.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.
Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building,
Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be
made before final publication in the permanent volume.

**VOIGT, Justice.**

[¶1]    Harold F. "Butch" Vandre, Jr. was severely injured while working for McMurry Ready Mix on a road paving project in Sublette County.  He and his wife (collectively "appellants") filed suit against, *inter alia*, two co-employee supervisors claiming their willful and wanton misconduct was the cause of the resulting injuries.  The district court granted summary judgment in favor of the co-employee supervisors, determining they did not intentionally act to cause physical harm, as defined under Wyo. Stat. Ann. § 27-14-104(a) (LexisNexis 2013).  We find that no genuine issues of material fact exist and the co-employee supervisors are entitled to judgment as a matter of law.  We affirm.

## ISSUE

[¶2]    Did the district court err in finding the undisputed material facts failed to establish that the co-employee supervisors possessed knowledge of the hazard or serious nature of the risks that led to the appellant's injury and willfully disregarded the need to act despite the awareness of the high probability that serious injury may result?

## FACTS

[¶3]    In the summer of 2007, McMurry Ready Mix (MRM) was hired to pave a two-lane road in Sublette County.  While working on this project, MRM employee Vandre was hit and dragged by an asphalt paving machine being driven by co-employee Willie Dorsey.[1]  At the time of the accident, Jason Kuznia was the project manager and Jared "Cub" Sjulestad was the paving foreman (collectively "co-employee supervisors").

[¶4]    On the day of the accident, August 23, 2007, Vandre was working on the dirt crew to finish shoulder work along the final sections of the road project.  His tasks for the day were to grade slopes with the motor grader and check stakes.  The paving crew, including Dorsey, had finished its work the day before, leaving only mobilization of their equipment to a staging area for pick-up and transfer back to Casper.

[¶5]    First thing that morning, both crews met to discuss respective tasks for the day.  Although not the usual operator, Dorsey was assigned to move the asphalt paver from its existing location to the staging area.  Dorsey did not like driving the paver, however, because he could not see everything immediately in front of the machine.[2]  Everyone, including his co-employee supervisors, apparently knew he did not like to drive this particular machine.  He told his co-employee supervisors sometime before the incident that the operator "can't see everything" when mobilizing the paver.

---

[1] The Amended Complaint names Dorsey as a defendant; however, a default judgment was entered against Dorsey and he is not a party to this appeal.
[2] It was estimated that the top speed of the paver was approximately between 5-8 mph.

[¶6]    The asphalt paver has two operating positions on the rear of the machine: one on the right and another on the left, giving the operator a choice from which side to drive the machine.  Although there were two positions to operate the machine, it was standard to have only one driver.  The paver also had an implement attached to its front-end known as a windrow elevator.  This windrow elevator impedes the operator's view, creating a blind spot in front and to the side of the implement.

[¶7]    Vandre's co-employee supervisors had operated the asphalt paver with the windrow elevator attached in identical circumstances during their employment with MRM.  Both knew the windrow elevator obscured the operator's line-of-vision and created a blind spot.  However, it was common for the paver to be driven with the windrow elevator attached, and neither the co-employee supervisors nor Vandre nor Dorsey had any knowledge of a previous accident with the paver similar to the one involving Vandre.

[¶8]    After the morning meeting, the crews began working on their respective tasks. Following his supervisor's instruction, Dorsey began driving the asphalt paver from the left rear operating position eastbound down the road to the staging area.  Dorsey operated the paver from the left side in order to see oncoming traffic, as the road had been opened to the public.  This left Dorsey with a blind spot to the front-right of the machine, where the shoulder of the road was located.

[¶9]    Vandre was operating a dozer to move dirt on the shoulder of the road east of where Dorsey began mobilizing the paver.  At some point, however, Vandre exited the dozer and walked on the shoulder of the road, stopping to talk with other MRM employees.  During their conversation, Vandre and the other employees observed the paver approaching, at which point Vandre proceeded to walk eastbound down the shoulder of the road.  Soon thereafter, Vandre was struck by the paver and dragged approximately 150 feet before someone realized what had happened.[3]  Vandre suffered serious injuries, including brain damage and amputation of a leg.

[¶10] Later that day, Dorsey provided a urinalysis which was negative for drugs and alcohol.  The next day, OSHA advised MRM that it would not investigate the incident, but directed it to conduct its own investigation to determine what happened and how to take steps in the future to prevent a similar accident.  OSHA subsequently advised MRM that the measures taken were adequate and closed the matter.

---

[3] Vandre does not remember many details about the incident.  Specifically he does not remember seeing or hearing the paver and his "last memory of the incident [was] working near the side of the road . . . and do[es] not remember the incident, being struck, or anything else."

[¶11] The appellants filed their action alleging Vandre's co-employee supervisors acted willfully and wantonly because they knew the windrow elevator attachment on the paver created a blind spot, but failed to act and merely followed the same course of conduct taken for many years when mobilizing this piece of machinery. The appellants claim such conduct exposed Vandre to unnecessary and heightened risk of harm or injury. The co-employee supervisors answered the complaint and discovery ensued. Based upon the evidence gathered through discovery, the co-employee supervisors filed a motion for summary judgment. In a twenty-two page decision letter, the district court granted the motion, finding neither co-employee supervisor had knowledge of a hazard or serious nature of the risk involved that led to Vandre's injury, nor did they willfully disregard the need to act.

## STANDARD OF REVIEW

[¶12] We conduct a *de novo* review of orders granting summary judgment, viewing the summary judgment in the same light as the district court, using the same materials and following the same standards. *Herling v. Wyo. Mach. Co.*, 2013 WY 82, ¶ 24, 304 P.3d 951, 957 (Wyo. 2013). We study the record from the vantage point most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.*

[¶13] Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. W.R.C.P. 56(c). A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *ORO Mgmt., LLC v. R.C. Mineral & Rock, LLC*, 2013 WY 77, ¶ 10, 304 P.3d 925, 927 (Wyo. 2013).

## DISCUSSION

[¶14] The Wyoming Worker's Compensation Act sets forth the rights and remedies for an employee injured in the course of employment, which are in lieu of other remedies against the employer and co-employees. However, that immunity does not extend to co-employees who intentionally act to cause physical harm or injury. Specifically, the Act provides:

> (a) The rights and remedies provided in this act for an employee including any joint employee, and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer and any joint employer making contributions required by this act, or their employees acting within the scope of their employment ***unless the employees intentionally act to cause***

***physical harm or injury to the injured employee***, but do not supersede any rights and remedies available to an employee and his dependents against any other person.

Wyo. Stat. Ann. § 27-14-104 (LexisNexis 2013) (emphasis added).

[¶15]  We have had several occasions to interpret "intentionally act to cause harm or injury," equating the phrase to "willful and wanton misconduct." *Van Patten v. Gipson*, 2011 WY 98, ¶ 10, 253 P.3d 505, 507 (Wyo. 2011); *Formisano v. Gaston*, 2011 WY 8, ¶ 16, 246 P.3d 286, 290 (Wyo. 2011); *Loredo v. Solvay Am., Inc.*, 2009 WY 93, ¶ 17, 212 P.3d 614, 628-29 (Wyo. 2009); *Hannifan v. Am. Nat'l Bank of Cheyenne*, 2008 WY 65, ¶ 7, 185 P.3d 679, 683 (Wyo. 2008); *Bertagnolli v. Louderback*, 2003 WY 50, ¶ 15, 67 P.3d 627, 632 (Wyo. 2003).   "Willful and wanton misconduct is the intentional doing of an act, or an intentional failure to do an act, in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, in a high degree of probability, result in harm to another." *Hannifan*, 2008 WY 65, ¶ 34 n.2, 185 P.3d at 692 n.2.  Succinctly put, there must be proof that the defendant "acted with a state of mind approaching intent to do harm or committed an act of an unreasonable character in disregard of known or obvious risks so great as to make it highly probable that harm would follow." *Formisano*, 2011 WY 8, ¶ 17, 246 P.3d at 291 (citations omitted).  Consistent with the required culpability to remove the veil of immunity under the Act, we have explained

> the key factors in finding co-employee liability under § 27-14-104(a) are a co-employee with (1) knowledge of the hazard or serious nature of the risk involved, (2) responsibility for the injured employee's safety and work conditions, and (3) willful disregard of the need to act despite the awareness of the high probability that serious injury or death may result.

*Bertagnolli*, 2003 WY 50, ¶ 16, 67 P.3d at 633.

[¶16]  Most recently, we revisited this issue in *Van Patten v. Gipson*, affirming the grant of summary judgment to co-employees, where the plaintiff was injured while working on a drilling rig.  2011 WY 98, ¶ 1, 253 P.3d at 505.  In affirming the district court's decision that the conduct at issue did not constitute willful and wanton misconduct, we again examined our precedent and reaffirmed our interpretation of Wyo. Stat. Ann. § 27-14-104(a).  We explained that to make a showing that a co-employee's acts or omissions are willful and wanton, a plaintiff must submit evidence showing the co-employees had knowledge of the dangerous condition and demonstrated a disregard of the danger through intentional acts.  *Id.* at ¶ 10, at 507.  Applying this standard, we considered the evidence and were persuaded the injured employee failed to meet his burden.  Van Patten

was rigged with a harness to pressure wash a derrick. *Id*. at ¶ 4, at 506. During the course of this task, he sustained a compression fracture in the thoracic spine. *Id*. at ¶ 6, at 507. Testimony was presented that company procedure was violated by allowing Van Patten to be lifted in the manner he was without a written job safety analysis and filling out a personnel hoisting pre-job checklist. Van Patten presented additional evidence that his co-employees knew that such procedures were to be completed before a job commenced. *Id*. at ¶ 23, at 510. After reviewing the evidence in the light most favorable to Van Patten, including the evidence that company policy was violated, we concluded the district court properly granted summary judgment. *Id*. at ¶ 27, at 511. We found that "[n]o evidence was presented showing that any of the co-employees intentionally acted to cause Mr. Van Patten physical harm. Nor was evidence presented showing that they had knowledge of, and intentionally disregarded, the danger associated" with the incident. *Id.*

[¶17] Adhering to our precedent, we turn to the instant case and examine the evidence in the light most favorable to the appellants. They argue the district court erred because of two salient disputed facts: First, the co-employee supervisors "were warned, prior to the incident, that the windrow elevator, when attached to the asphalt paver for mobilization, created a blind spot that prevented the operator from seeing the roadway—and things on the roadway—immediately in front of him. . . . Second, despite being armed with this knowledge of this dangerous condition, [the co-employee supervisors] took no action, and in fact persisted in the same course of conduct, thereby exposing other employees and the public to unnecessary and heightened risks." To bolster their position on the severity of the circumstances, the appellants argue that the co-employee supervisors knew of four broad categories of hazards: (1) the blind spot created by the windrow elevator; (2) the road was opened to the public at the time of the accident;[4] (3) Dorsey was not the usual driver of the paver and had a reputation as dangerous; and (4) Dorsey may have been impaired when the accident occurred. A solicitous review of the record, however, reveals that the co-employee supervisors did not act willfully and wantonly. We are convinced the district court did not err and summary judgment is warranted.

[¶18] There is no genuine issue of material fact that the co-employee supervisors knew the windrow elevator obstructed the paver operator's line-of-site, because they themselves had operated the asphalt paver in identical circumstances and admitted they knew of the blind spot. However, this conduct does not satisfy the test for co-employee liability under the Wyoming Worker's Compensation Act. While the co-employee supervisors' knowledge of the blind spot and direction for Dorsey to drive the paver to the staging area without additional precautions, such as flaggers, may arguably have been a thoughtless error in judgment, it does not rise to the level of willful misconduct. The appellants have presented no evidence demonstrating that the co-employee supervisors knew of the hazard or serious nature of the risk involved in directing Dorsey to move the paver under the circumstances. There is no evidence that anyone—the co-employee

---

[4] We consider this alleged fact a red herring and irrelevant to our analysis.

supervisors, Vandre, or Dorsey—knew of a similar accident involving the paver. Unlike *Bertagnolli*, where evidence established the supervisors' knowledge of the general risks of working near the shuttle belt, here the evidence shows the risk that someone would be hit by the paver during mobilization was a mere possibility that had never happened before. The danger involved in driving the paver was not obvious and the risk of Vandre's injuries were not highly probable. Simply put, the co-employee supervisors' actions were not an extreme departure from ordinary care in a situation where a high degree of danger was apparent. *See Formisano*, 2011 WY 8, ¶ 19, 246 P.3d at 292.

[¶19] Furthermore, the appellants also expend a great deal of effort attempting to paint Dorsey as a dangerous and reckless employee who was intoxicated on the day at issue. However, no competent evidence was presented that Dorsey was reckless or intended to cause the accident when driving the paver that day. In fact, Vandre conceded he had no reason to believe Dorsey was being derelict or intended to run him over. Similarly, the appellants presented no evidence that Dorsey was impaired at the time of the accident or that the co-employee supervisors were aware of such an allegation. Although Vandre claimed he could smell alcohol on Dorsey at the morning meeting, he conceded Dorsey was not drunk and the smell of the alcohol was allegedly the result of drinking the night before. Vandre also admits that even if Dorsey had been drinking the night before, it did not affect his ability to drive the paver the day of the accident. Confirming the point that alcohol did not play a part in the accident, Dorsey was tested for drugs and alcohol after the accident and the results were negative.

[¶20] Lastly, we note there are no material facts at issue concerning the co-employee supervisors' lack of intent to do harm or willful disregard of the need to act despite the awareness of a high probability that serious injury would result. Vandre himself confirms this point when he testified that he has no evidence or reason to believe that his co-workers had any animosity towards him and intended to hit him with the paver.

**CONCLUSION**

[¶21] No genuine issues of material fact exist and the co-employee supervisors are entitled to judgment as a matter of law. The undisputed facts in this case simply do not demonstrate the type of conduct necessary to impose co-employee liability under Wyo. Stat. Ann. § 27-14-104(a).

[¶22] Affirmed.