# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 67

APRIL TERM, A.D. 2026

June 18, 2026

DUSTY COURTNEY,

Appellant
(Plaintiff),

v.

S-25-0260

KENNETH MEYER,

Appellee
(Defendant).

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellant:*
Alex Freeburg and Rachel Berkness, Freeburg Law, LLC, Jackson, Wyoming. Argument by Ms. Berkness.

*Representing Appellee:*
James C. Worthen, Sundahl, Powers, Kapp & Martin, LLC, Casper, Wyoming. Argument by Mr. Worthen.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]    Dusty Courtney sustained serious injuries during the course of his employment when his hand was caught in the pinch point of a garbage truck's lift arms as the arms were being raised.  Mr. Courtney sued his co-employee, Kenneth Meyer, who was operating the lift arms at the time of the accident.  Mr. Courtney claimed Mr. Meyer was liable for his injuries pursuant to the Wyoming Worker's Compensation Act, Wyo. Stat. Ann. § 27-14-104(a) (the Act), because he willfully and wantonly acted to cause the injury.  The district court granted summary judgment to Mr. Meyer, concluding he was immune from liability under the Act.  Mr. Courtney argues genuine issues of material fact regarding whether Mr. Meyer's conduct was willful and wanton preclude summary judgment.  We affirm.

*ISSUE*

[¶2]    We rephrase the issue:

> Did the district court err when it ruled there were no genuine issues of material fact regarding whether Mr. Meyer acted willfully and wantonly such that he would be liable pursuant to the Act?

*FACTS*

[¶3]    Mr. Courtney and Mr. Meyer worked for Wyoming Waste Systems.  Mr. Meyer had been operating garbage trucks for 28 years, and on August 4, 2023, he was training Mr. Courtney.  Mr. Courtney was driving the garbage route, and Mr. Meyer rode along in the passenger seat.  The truck Mr. Courtney and Mr. Meyer were using is equipped with lift arms that raise and lower dumpsters from the front of the truck to deposit trash into the truck's container.  The controls to operate the lift arms are located inside the cab.

[¶4]    Early in the morning, while it was still dark outside, Mr. Courtney and Mr. Meyer entered a property, located the dumpster and, using the lift arms, raised the dumpster and deposited its contents into the truck.  After lowering the dumpster, they headed away from the property.  Mr. Courtney then felt ill and stopped the truck.  Mr. Courtney and Mr. Meyer had the following exchange:

> MR. COURTNEY: Hold on a minute.
>
> MR. MEYER: Huh?
>
> MR. COURTNEY: I don't feel that great at the moment.
>
> MR. MEYER: What?

1

MR. COURTNEY: I don't feel that great right now.

[¶5]    Mr. Courtney got out of the truck on the driver's side so he could vomit.  The vehicle was still running and the lift arms were in their lowered, unstowed position.  Mr. Meyer remained in the vehicle, in the passenger seat.  He noticed that the lift arms were not stowed.  He looked out the passenger window and saw no obstructions.  From his position in the passenger seat, he engaged the controls to return the lift arms to their raised position.  Unbeknownst to Mr. Meyer, Mr. Courtney had placed his hand at the pinch point of the truck's driver's side lift arm.  When Mr. Meyer activated the controls, the lift arm caught Mr. Courtney's hand, causing injury.

[¶6]    Mr. Courtney sued Mr. Meyer, alleging co-employee liability.  Mr. Meyer moved for summary judgment, asserting there was no dispute of material fact as to whether his conduct was willful and wanton.  The district court granted Mr. Meyer's motion for summary judgment, and Mr. Courtney appeals.

### STANDARD OF REVIEW

[¶7]    Summary judgment "shall" be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  W.R.C.P. 56(a).  We review the district court's order granting summary judgment to Mr. Meyer de novo.  *Ramirez v. Brown*, 2020 WY 79, ¶¶ 11–14, 466 P.3d 285, 289 (Wyo. 2020); *Gowdy v. Cook*, 2020 WY 3, ¶ 21, 455 P.3d 1201, 1206 (Wyo. 2020).

> [W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards.  We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.
>
> The immunity afforded co-employees under the Workers' Compensation Act in no way alters this standard.
>
> As movants, [co-employees] bear "the initial burden of establishing a prima facie case for summary judgment . . . by showing a lack of evidence on an essential element of [the plaintiff's] claim."  If they present a prima facie case, the

2

burden shifts to [the plaintiff], as the opposing party, "to present materials demonstrating a genuine dispute as to a material fact for trial." He "must affirmatively set forth material, specific facts in opposition" to the motion.

*Ramirez*, ¶¶ 11–13, 466 P.3d at 289 (citations omitted).

### *DISCUSSION*

[¶8]    "Article 10, § 4(c) of the Wyoming Constitution and the Workers' Compensation Act generally provide compensation to employees injured in extrahazardous jobs regardless of fault; in return, employers are immunized from liability for their employees' work-related injuries." *Lovato v. Case*, 2022 WY 151, ¶ 8, 520 P.3d 1144, 1148 (Wyo. 2022). The Act also immunizes co-employees acting in the scope of their employment from liability "unless [they] intentionally act to cause physical harm or injury to the injured employee[.]" Wyo. Stat. Ann. § 27-14-104(a).

[¶9]    We have interpreted the statutory language of "intentionally act" to be "the equivalent of willful and wanton misconduct." *Ramirez*, ¶ 15, 466 P.3d at 289–90 (quoting *Herrera v. Phillipps*, 2014 WY 118, ¶ 18, 334 P.3d 1225, 1230 (Wyo. 2014) (citing *Bertagnolli v. Louderback*, 2003 WY 50, ¶ 15, 67 P.3d 627, 632 (Wyo. 2003))). Willful and wanton misconduct is defined as "the intentional doing of an act, [or the intentional failure to act,] in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know[,] . . . would, in a high degree of probability, result in harm to another." *Ramirez*, ¶ 15, 466 P.3d at 290 (quoting *Herrera*, ¶ 18, 334 P.3d at 1230 (citing *Bertagnolli*, ¶ 15, 67 P.3d at 632)). To establish willful and wanton misconduct, "there must be proof that the defendant 'acted with a state of mind approaching intent to do harm or committed an act of an unreasonable character in disregard of known or obvious risks so great as to make it highly probable that harm would follow.'" *Vandre v. Kuznia*, 2013 WY 127, ¶ 15, 310 P.3d 919, 922 (Wyo. 2013) (quoting *Formisano v. Gaston*, 2011 WY 8, ¶ 17, 246 P.3d 286, 291 (Wyo. 2011)).

[¶10]  The district court concluded Mr. Meyer was immune from liability under § 27-14-104(a) because the evidence did not demonstrate Mr. Meyer "knew that [Mr. Courtney] was in immediate danger, creating a high probability of harm." Mr. Courtney contends the evidence creates a question of fact as to whether Mr. Meyer acted willfully and wantonly by raising the lift arms from the passenger seat when he did not know or attempt to find out where Mr. Courtney was located, in violation of numerous safety rules.

[¶11]        [T]he key factors in finding co-employee liability under § 27-14-104(a) are a co-employee with (1) knowledge of the hazard or serious nature of the risk involved, (2) responsibility for the injured employee's safety and work conditions, and (3) willful

3

disregard of the need to act [to protect the injured worker's safety] despite the awareness of the high probability that serious injury or death may result.

*Vandre*, ¶ 15, 310 P.3d at 923 (quoting *Bertagnolli*, ¶ 16, 67 P.3d at 633); *Lovato*, ¶ 10, 520 P.3d at 1148 (quoting *Bertagnolli*, ¶ 16, 67 P.3d at 633, and citing *Herrera*, ¶ 21, 334 P.3d at 1231). To survive summary judgment, the injured co-worker must demonstrate a genuine issue of material fact exists as to each of these factors. *Lovato*, ¶ 10, 520 P.3d at 1148 (citing *Ramirez*, ¶ 16, 466 P.3d at 290).

[¶12]  The dispositive factor here is Mr. Meyer's knowledge of the hazard or serious nature of the risk involved. We have explained, "that knowledge of the hazard or serious nature of the risk involved must be more than just generalized knowledge of a possible risk." *Ramirez*, ¶ 25, 466 P.3d at 292 (citing *Vandre*, ¶ 18, 310 P.3d at 923–24). "[A]n injured worker cannot establish the particularized knowledge requirement by simply showing his co-employee knowingly violated general safety regulations or standards." *Lovato*, ¶ 17, 520 P.3d at 1150 (citing *Ramirez*, ¶ 25, 466 P.3d at 292). Instead, to have the requisite knowledge, the co-employee must disregard "known or obvious risks so great as to make it highly probable that harm would follow." *Formisano*, ¶ 17, 246 P.3d at 291 (quoting *Bertagnolli*, ¶ 17, 67 P.3d at 633); *see also McKennan v. Newman*, 902 P.2d 1285, 1288 (Wyo. 1995) (to raise a genuine issue of material fact, a plaintiff must present evidence their co-employee "acted with knowledge of the particular danger posed . . .").

[¶13]  In *Lovato*, Mr. Case operated a truck transporting concrete to a construction site, and Mr. Lovato worked with the crew forming and finishing the wet concrete. Mr. Case was instructed to move the truck to a new pour site and as he was driving to that site, he ran over Mr. Lovato, injuring his foot. *Lovato*, ¶ 4, 520 P.3d at 1147. Mr. Lovato asserted, at the time of the accident, Mr. Case knowingly violated safety standards by failing to keep a proper lookout, by failing to clear the area before driving by getting out of his truck and looking around, and by talking on his cell phone without using a handheld device, all acts contrary to company policy. *Id.* ¶¶ 12–22, 520 P.3d at 1148–52. Mr. Case "acknowledged the safety rules were mandatory because they protected 'people [from getting] hurt'" and that he "did not get out of his truck to clear the area or signal his intent before he moved the truck," but "stated he did not see Mr. Lovato when he looked out of the windshield and checked his mirrors" and denied using his cell phone. *Id.* ¶ 22, 520 P.3d at 1151. We assumed all Mr. Lovato's allegations were true and concluded these facts "could certainly support a conclusion Mr. Case was negligent," but they did not create a genuine issue of material fact as to whether there was a known or obvious risk of a high probability of harm. *Id.* ¶ 23, 520 P.3d at 1152.

[¶14]  In *Vandre*, Mr. Vandre was injured when an asphalt paving machine driven by one of his co-employees, Mr. Dorsey, hit him as he walked along the shoulder of the road. *Vandre*, ¶¶ 3–9, 310 P.3d at 920–21. Mr. Vandre sued his co-employee supervisors who

4

directed Mr. Dorsey to move the paver. The co-employee supervisors were aware there was a potentially dangerous "blind spot" in front of the machine and did not take any precautions to mitigate the dangerous condition. *Id.* ¶¶ 5–6, 18, 310 P.3d at 921, 923–24. We explained:

> [T]he risk that someone would be hit by the paver during mobilization was a mere possibility that had never happened before. The danger involved in driving the paver was not obvious and the risk of [Mr.] Vandre's injuries w[as] not highly probable. Simply put, the co-employee supervisors' actions were not an extreme departure from ordinary care in a situation where a high degree of danger was apparent.

*Id.* ¶ 18, 310 P.3d at 923–24. We held the co-employee supervisors' conduct "may arguably have been a thoughtless error in judgment, [but did] not rise to the level of willful misconduct." *Id.*

[¶15] In *Poulos v. HPC*, Mr. Poulos inhaled toxic fumes while cleaning tanks at an oil well site and died. His estate sued his co-employees, including his supervisor, for wrongful death, alleging their conduct was willful and wanton pursuant to § 27-14-104(a). *Poulos v. HPC, Inc.*, 765 P.2d 364, 365–66 (Wyo. 1988). We held that, except for the supervisor, Mr. Poulos' co-employees were immune from liability because, while they were aware of the risk of exposure to toxic fumes and the safety rules implemented to minimize the risk, they were unaware of a particular risk to Mr. Poulos on the day he died. *Id.* at 366. In contrast, the supervisor had personally entered the tanks that day and testified the fumes made him feel "worse than drunk." *Id.* at 367. Nevertheless, he allowed Mr. Poulos to work in the tank without ensuring Mr. Poulos' safety. *Id.* We found genuine issues of material fact existed regarding whether Mr. Poulos' supervisor could be found culpably negligent. We held a "trier of fact could reasonably find a known or obvious risk presenting a high probability of harm." *Id.*

[¶16] In *Bertagnolli*, the co-employee supervisors were aware it was unsafe to work on a mine shuttle belt unless it was "locked out." They knew "of numerous ways a worker could be injured [working on the shuttle belt] through amputation of body parts or even loss of life" and recognized the work done on and around the shuttle belt was "extremely hazardous." *Bertagnolli*, ¶¶ 21, 24, 67 P.3d at 634–35. Mr. Bertagnolli objected to working on the shuttle belt unless it was locked out, and his supervisors instructed him to proceed or risk being fired. *Id.* ¶ 21, 67 P.3d at 634. We reversed summary judgment, holding there were genuine issues of material fact regarding whether Mr. Bertagnolli's "supervisors 'intentionally act(ed) to cause physical harm or injury' and their actions constituted willful and wanton misconduct." *Id.* ¶ 25, 67 P.3d at 635 (emphasis removed); *see also Case v. Goss*, 776 P.2d 188 (Wyo. 1989) (reversing summary judgment where co-

5

employee supervisor was aware of the dangerous condition, failed to take steps to remedy it, and threatened to fire a complaining employee who was ultimately injured).

[¶17] We examine this case in the context of our precedent, viewing the evidence in the light most favorable to Mr. Courtney. Mr. Courtney's argument that there are genuine issues of material fact regarding whether Mr. Meyer's conduct was willful and wanton rests on three assertions: 1. Mr. Meyer created a "unique risk" by operating the lift arm controls from the passenger seat; 2. Mr. Meyer knew Mr. Courtney was in his "blind spot"; and 3. Mr. Meyer violated multiple safety rules.

[¶18] It is not disputed that Mr. Meyer operated the controls to raise the lift arms from the passenger seat or that Mr. Meyer could not see where Mr. Courtney was at the time of the accident. Mr. Meyer defined his "blind spot" as the area around the truck where he could not see. This included the driver and passenger sides of the vehicle, to the rear of the cab, and behind the vehicle. Mr. Meyer agreed that Mr. Courtney was in his "blind spot" when he raised the lift arms. As required by the summary judgment standard of review, we assume, as alleged by Mr. Courtney, Mr. Meyer violated the following safety rules and training principles: (1) the rule requiring "extreme caution during poor visibility conditions" because it was dark outside; (2) the Get Out and Look (GOAL) rule requiring someone to get out of the vehicle and look when in doubt; (3) the rule requiring someone to keep helpers in view and the area clear of hazards; (4) the rule requiring a person to be aware of his surroundings; and (5) the training to not assume others will act predictably. Mr. Courtney contends the cumulative effect of the rule violations and the undisputed facts preclude summary judgment.

[¶19] Mr. Courtney also points to Mr. Meyer's previous safety record to argue he had a "disregard for . . . workplace safety." Mr. Courtney further contends that Mr. Meyer's conduct post-accident—including calling him a "dumb***," yelling at him after the accident, and dropping him off at Wyoming Waste's yard instead of taking him directly to the hospital—demonstrated Mr. Meyer's "lack of care" for Mr. Courtney's well-being.

[¶20] While Mr. Meyer's conduct and disregard for safety rules might support a claim of negligence, it does not rise to the level of willful misconduct. To establish willful misconduct, Mr. Courtney had to produce evidence that Mr. Meyer knew there was a risk that Mr. Courtney would place his hand in the pinch point of the garbage truck's lift arm or that it was obvious to Mr. Meyer that he would do so or that it was highly probable raising the lift arms would result in harm. *Ramirez*, ¶ 25, 466 P.3d at 292 (citing cases). As the Court emphasized in *Ramirez*, "he must do more than suggest [Mr. Meyer] had the requisite knowledge based on evidence of safety regulation violations." *Id.* (citing cases). Mr. Courtney has not produced evidence that the risk was known or obvious or that Mr. Meyer knew or should have known that his conduct was highly likely to result in harm. The danger involved in raising the lift arms was not obvious, and the risk of Mr. Courtney's injuries was not highly probable. Unlike *Poulos*, *Bertagnolli*, and *Case*, where evidence

showed co-employee supervisors had knowledge of the specific risks involved, here the evidence showed only a general risk that someone could be injured by the pinch point. *See Vandre*, ¶ 18, 310 P.3d at 924. The danger of getting caught in the lift arm pinch point and the risk of Mr. Courtney's injuries was not highly probable. Mr. Meyer's actions were not an extreme departure from ordinary care in a situation where a high degree of danger was apparent.

[¶21] Mr. Courtney's contentions regarding Mr. Meyer's safety record and his "lack of care" toward Mr. Courtney are largely irrelevant. The first infraction occurred in 2011. Mr. Meyer was reprimanded for "risky events . . . with no willingness to . . . fix his risky driving after many coachings." At his deposition, Mr. Meyer testified he received coaching and "complied with it." The second safety infraction stemmed from an incident where Mr. Meyer backed his truck into a power pole. "[T]o prove willful and wanton misconduct by a co-employee the injured worker must demonstrate the co-employee knew of a serious risk posed by an unsafe condition and willfully disregarded the need to take action to protect the worker from the risk despite the high likelihood of harm." *Lovato*, ¶ 17, 520 P.3d at 1150 (citing *Ramirez*, ¶ 16, 466 P.3d at 290 (citing *Bertagnolli*, ¶ 16, 67 P.3d at 633, and *Herrera*, ¶ 21, 334 P.3d at 1231)). Neither of Mr. Meyer's prior safety infractions demonstrate he knew or should have known of an unsafe condition creating a high likelihood Mr. Courtney would be harmed. Mr. Meyer's alleged callous response to Mr. Courtney's injury—a characterization which Mr. Meyer contests, but under the standard of review, this Court assumes to be true—is also irrelevant. Co-employee liability requires willful and wanton misconduct in causing the injury. Mr. Meyer's response to the injury without more does not establish the level of culpability required for willful and wanton misconduct.

[¶22] The district court properly granted summary judgment in Mr. Meyer's favor.

### CONCLUSION

[¶23] Summary judgment was appropriate because there are no genuine issues of material fact regarding whether Mr. Meyer's conduct was willful and wanton. We affirm.

7