# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 3

### OCTOBER TERM, A.D. 2019

January 8, 2020

GERALD E. GOWDY, beneficiary of the
Marian Louise Jackson Living Trust,

Appellant
(Plaintiff),

v.

S-19-0005

DENNIS C. COOK, CRAIG C. COOK
and COOK AND ASSOCIATES, P.C.

Appellees
(Defendants).

*Appeal from the District Court of Albany County*
The Honorable Tori R.A. Kricken, Judge

*Representing Appellant:*

Erik J. Oblasser and Frank R. Nelson of Corthell and King Law Office, P.C., Laramie, Wyoming. Argument by Mr. Oblasser.

*Representing Appellees:*

Julie N. Tiedeken of McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     Appellant Gerald E. Gowdy was a beneficiary of the Marian Louise Jackson Living Trust.  Mr. Gowdy sued Appellees Dennis C. Cook, Craig C. Cook and Cook and Associates, P.C. (collectively referred to herein as "the Cooks"), claiming they violated various duties when drafting and administering the trust and preparing certain estate planning documents for him.  The district court granted summary judgment in favor of the Cooks.  We affirm.

## ISSUES

[¶2]     The dispositive issues in this case are:

1. Did the district court err when it found Mr. Gowdy failed to establish a material issue of fact showing the Cooks' actions damaged him?

2. Did the district court abuse its discretion by denying Mr. Gowdy leave to file a second amended complaint?

3. Did the district court err by concluding, as a matter of law, Mr. Gowdy violated the no-contest provision of the trust by bringing an action to void, nullify or set aside a provision of the trust?

## FACTS

[¶3]     The underlying facts of this case are essentially undisputed.  Dennis C. Cook and Craig C. Cook[1] are law partners in Cook and Associates, P.C.  Marian Louise Jackson retained Dennis in 1996 to prepare the initial version of her revocable living trust.  Ms. Jackson restated her trust in January 2015, and she executed trust amendments in April and June of 2015.  Dennis drafted all of these documents.  In general terms, Mr. Gowdy was to be the primary beneficiary of the trust after Ms. Jackson's death.  Upon his death, Ms. Jackson's children would receive part of the trust assets and Mr. Gowdy's heirs would receive other trust assets, provided he exercised the power of appointment granted to him under the trust.

[¶4]     Ms. Jackson acted as trustee during her lifetime and appointed Dennis as her successor trustee and Craig as her trust protector.  The trust further stated that, after Ms. Jackson's death, "Cook and Associates, P.C. or its designated successor in interest may remove a [t]rust [p]rotector of any trust at any time, with or without cause" and appoint a successor trust protector.

---

[1] Because they share the same last name, we will refer to the individual appellees by their first names.

[¶5]     The trust protector or a majority of the income beneficiaries could remove a serving trustee and appoint a successor trustee.  A successor trustee could be an individual or a corporate fiduciary.  Section 3.06 of the trust set out qualifications for a corporate trustee:

> Any corporate fiduciary serving under this agreement as a [t]rustee must be a bank, trust company, or public charity that is qualified to act as a fiduciary under applicable federal and state law and that is not related or subordinate to any beneficiary within the meaning of Section 672(c) of the Internal Revenue Code.
>
> Such corporate fiduciary must:
>
> Have a combined capital and surplus of at least One Hundred Million Dollars; or
>
> Maintain in force a policy of insurance with policy limits of not less than One Hundred Million Dollars covering the errors and omissions of my [t]rustee with a solvent insurance carrier licensed to do business in the state in which my [t]rustee has its corporate headquarters; or
>
> Have at least One Hundred Million Dollars in assets under management.

[¶6]     Under § 11.08 of the trust, an individual trustee was entitled to "fair and reasonable compensation for the services provided as a fiduciary" and could "charge additional fees for services provided that are beyond the ordinary scope of duties, such as fees for legal services[.]"   Similarly, under § 3.10, the trust protector was entitled to reasonable compensation and could charge "typical fees for professional services."

[¶7]     Sections 11.06 and 11.07 exonerated the trustee for any "error of judgment, mistake of law, or action or inaction of any kind in connection with the administration" of the trust unless there was clear and convincing evidence the trustee had acted in bad faith.  The trust protector was also exonerated for any action taken in good faith.  Further, a trustee was entitled to "expend any portion of the trust assets to defend any claim brought against the [t]rustee, even if the [t]rustee's defense costs would exhaust the trust's value, unless the [t]rustee is shown to have acted in bad faith by clear and convincing evidence."  The trust protector was also entitled to reimbursement from the trust for costs incurred in defending any claim unless the trust protector had an actual intent to harm the beneficiaries of the trust or was self-dealing.

2

[¶8]   Ms. Jackson's trust also included the following no-contest provision which became important in this case:

> The right of a beneficiary to take any interest given to him or her under this trust or any trust created under this trust instrument will be determined as if the beneficiary predeceased [Ms. Jackson] without leaving any surviving descendants if that beneficiary, alone or in conjunction with any other person, engages in any of these actions:
> . . .
> seeks to obtain adjudication in any court proceeding that [the trust] or any of its provisions is void, or otherwise seeks to void, nullify, or set aside [the trust] or any of its provisions[.]
> . . .
> My [t]rustee may defend any violation of this [s]ection at the expense of the trust estate.

[¶9]   Dennis prepared durable powers of attorney for health care and living wills for Ms. Jackson and Mr. Gowdy, in which they named each other as their agents. On other occasions, he prepared deeds for Ms. Jackson and Mr. Gowdy for their jointly-owned property.

[¶10]  Ms. Jackson passed away on July 2, 2015, and the trust became irrevocable. At that point, Dennis became acting trustee and Craig began serving as trust protector. Dennis prepared a will, a general power of attorney, a power of attorney for health care, and living will for Mr. Gowdy. Dennis did not charge Mr. Gowdy for those services.

[¶11]  In August or September of 2016, Mr. Gowdy complained the trust was being mismanaged and asked Dennis to resign as trustee. In the alternative, he asked Craig, as trust protector, to replace Dennis with another trustee. Mr. Gowdy also claimed that the Cooks had conflicts of interest regarding their management of the trust and Dennis's representation of him. Craig resigned as trust protector and appointed another estate-planning colleague, William Winter, in his place. Dennis refused to resign as trustee.

[¶12]  Mr. Gowdy filed a complaint on July 31, 2017, and an amended complaint on January 8, 2018. He stated causes of action against the Cooks for malpractice, breach of fiduciary duties, breach of the duty of good faith and fair dealing, and negligence. His causes of action overlapped and relied on many of the same facts. In general, Mr. Gowdy complained about the no-contest and trustee exculpatory provisions in Ms. Jackson's trust. He also claimed the compensation provisions allowed Dennis and Craig to double-bill the trust for services provided as trustee and trust protector and for their legal services. Additionally, Mr. Gowdy asserted Dennis was negligent in drafting Mr. Gowdy's estate planning documents without asking about his goals or recognizing there were potential

3

conflicts of interest between Mr. Gowdy, Ms. Jackson and Dennis (in his capacity as trustee).

[¶13]  Mr. Gowdy claimed Dennis improperly managed the trust by paying bills late and remitting the wrong amounts, charging the trust too much for his services, failing to have a fee agreement with the trust, allowing Craig and another attorney at Cook and Associates to serve as trustee in his absence, and providing private information about Mr. Gowdy to the residuary beneficiaries.  Mr. Gowdy also complained that Dennis improperly exercised his sole and absolute discretion when he denied Mr. Gowdy's request for a trust distribution to pay attorney fees he incurred when another law firm drafted an estate plan for him.

[¶14] Mr. Gowdy claimed Dennis violated the conflict-of-interest provisions of the Wyoming Rules of Professional Responsibility by simultaneously representing him and Ms. Jackson before her death and representing him while acting as trustee after Ms. Jackson's death.  He also claimed the Cooks improperly solicited Ms. Jackson to appoint them to various roles in the trust administration and those roles resulted in improper conflicts of interest.  Mr. Gowdy asserted that Craig, while acting as trust protector, failed to properly supervise Dennis's actions as trustee and improperly appointed Mr. Winter as replacement trust protector.

[¶15]  Mr. Gowdy also sought a declaratory judgment prohibiting the Cooks from utilizing trust resources to defend the action.  In his prayer for relief, Mr. Gowdy asked the district court to:  remove Dennis as trustee; award monetary damages, including attorney fees, to him and the trust; require the Cooks to provide a trust accounting; enter the declaratory judgment referenced above; and enter a "decanted trust," which he attached to the complaint, to "repair issues" due to Dennis's drafting errors.[2]  Mr. Gowdy proposed in his decanted trust to remove the requirement that a corporate trustee have assets or insurance coverage of at least one hundred million dollars.

[¶16]  The Cooks filed an answer, and Dennis (as trustee) counterclaimed for a declaratory judgment ruling that Mr. Gowdy had, under the no-contest provision of the trust, forfeited his rights as a beneficiary by seeking to void, nullify or set aside a provision of the trust and  Dennis and Craig may use trust resources to defend the action.[3]

---

[2] Mr. Gowdy's so-called "decanted trust" is not a trust decanted pursuant to Wyo. Stat. Ann. § 4-10-816(a)(xxviii), (b) (LexisNexis 2017).  Instead, it is a self-modified version of the trust at issue.  Although the statute grants Wyoming trustees significant decanting powers, nothing in the statute permits beneficiaries unilateral authority to decant a trust for which they stand to benefit. *See, e.g.*, Wyo. Stat. Ann. § 4-10-816(a) (stating "a trustee may" exercise any of the actions outlined by the Uniform Trustee Powers Act).

[3] While the action was pending, Dennis was replaced as trustee by a qualified corporate trustee (the Wyoming Trust Company).  The district court allowed Dennis to continue to prosecute the action pursuant to Wyoming Rule of Civil Procedure 25(c), which states:  "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted

4

[¶17] The Cooks filed a motion for summary judgment in their favor on all claims. They designated an attorney from Denver, Colorado, who practiced in the field of trusts and estates, as their expert witness. The defense expert opined that the Cooks did not violate any duty owed to Mr. Gowdy. She also stated the Cooks did not have conflicts of interest regarding their duties to the trust, Ms. Jackson or Mr. Gowdy, and the provisions of the trust which Mr. Gowdy claimed were improper were regularly included in well-drafted trusts. The defense expert further stated there was no evidence Mr. Gowdy or the trust was harmed by any of the Cooks' actions.

[¶18] Mr. Gowdy responded to the Cooks' motion for summary judgment and moved for summary judgment in his favor on all claims. Mr. Gowdy presented expert testimony from an experienced estate planning attorney and a law professor who had written extensively on the rules of professional conduct. They opined that Dennis committed malpractice and was negligent in drafting the trust and the Cooks had violated various rules of professional conduct when administering the trust.

[¶19] Mr. Gowdy also filed a motion for leave to file a second amended complaint and a motion to strike the defense expert's testimony regarding whether the Cooks had violated the rules of professional responsibility because she was not an expert on the rules. The district court denied Mr. Gowdy's motion for leave to file a second amended complaint, concluding the motion was untimely and the Cooks would be prejudiced if he were allowed to amend his complaint. The district court also denied Mr. Gowdy's motion to strike the Cooks' expert witness. It concluded she was sufficiently experienced and knowledgeable about how the rules of professional conduct applied in the context of trusts and estates to offer her opinion in this case.

[¶20] The district court held a hearing on the parties' combined motions for summary judgment. It subsequently granted summary judgment in favor of the Cooks and denied Mr. Gowdy's motion for summary judgment on all counts. Mr. Gowdy appealed.

## DISCUSSION

### 1. *Summary Judgment on Mr. Gowdy's Claims*

[¶21] Summary judgment is authorized under Wyoming Rule of Civil Procedure 56(a) when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." This Court reviews the district court's order granting summary judgment *de novo. Bear Peak Res., LLC v. Peak Powder River*

---

in the action or joined with the original party." In addition, Mr. Gowdy's agent under his general power of attorney began acting on his behalf.

5

*Res., LLC,* 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017); *International Assoc. of Firefighters, Local Union No. 5058 v. Gillette/Wright/Campbell County Fire Protection Jt. Powers Bd.,* 2018 WY 75, ¶ 19, 421 P.3d 1059, 1064 (Wyo. 2018).

> [W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

*Sullivan v. Pike and Susan Sullivan Foundation,* 2018 WY 19, ¶ 15, 412 P.3d 306, 310 (Wyo. 2018) (quoting *Rogers v. Wright*, 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016)) (other citations omitted).

[¶22] "The party requesting a summary judgment bears the initial burden of establishing a *prima facie* case for summary judgment." *Hatton v. Energy Elec. Co.,* 2006 WY 151, ¶ 9, 148 P.3d 8, 12 (Wyo. 2006). When the moving party does not have the ultimate burden of persuasion, it establishes a *prima facie* case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim. *See, e.g., Warwick v. Accessible Space, Inc.,* 2019 WY 89, ¶ 10, 448 P.3d 206, 211 (Wyo. 2019) (citing *Rammell v. Mountainaire Animal Clinic, P.C.,* 2019 WY 53, ¶¶ 27-28, 442 P.3d 41, 49 (Wyo. 2019), and *Mantle v. N. Star Energy & Constr. LLC,* 2019 WY 29, ¶ 116, 437 P.3d 758, 796 (Wyo. 2019)).

[¶23] Once the movant establishes a *prima facie* case for summary judgment, the burden shifts to the opposing party to present materials demonstrating a genuine dispute as to a material fact for trial. *Hatton,* ¶ 9, 148 P.3d at 12-13. "'The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment[.]'" *Jones v. Schabron,* 2005 WY 65, ¶ 10, 113 P.3d 34, 37 (Wyo. 2005) (quoting *Downen v. Sinclair Oil Corp.* 887 P.2d 515, 519 (Wyo. 1994)). The evidence presented in a summary judgment proceeding must be admissible and competent. *Id.;* W.R.C.P. 56 (c)(2). When the parties file cross-motions for summary judgment and the district court issues a decision completely resolving the case by granting summary judgment to one party and denying the other's motion, we review both aspects of the district court's order. *Dowell v. Dowell* (*In re Mark E. Dowell Irrevocable Trust*), 2012 WY 154, ¶ 16, 290 P.3d 357, 360 (Wyo. 2012).

[¶24] The district court granted summary judgment in favor of the Cooks on all of Mr. Gowdy's claims and denied his motion for summary judgment. During the summary

judgment hearing, the district judge clarified with Mr. Gowdy's counsel that the malpractice and negligence claims were the same and the breach of fiduciary duties and breach of the duty of good faith and fair dealing claims were the same. Accordingly, in the order granting summary judgment to the Cooks, the district court grouped the causes of action into two categories–malpractice/professional negligence and breach of fiduciary duties/breach of the duty of good faith and fair dealing.

[¶25] To establish a claim of legal malpractice, the plaintiff must show the attorney owed him a duty to perform in accordance with an accepted standard of care, the attorney's performance departed from the standard of care, and the attorney's breach of the standard of care harmed the plaintiff. *Tozzi v. Moffett,* 2018 WY 133, ¶ 36, 430 P.3d 754, 764 (Wyo. 2018); *Rivers v. Moore, Myers & Garland, LLC,* 2010 WY 102, ¶ 12, 236 P.3d 284, 290-91 (Wyo. 2010). Regarding the standard of care, an attorney is required to exercise the degree of "'care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in Wyoming.'" *Tozzi,* ¶ 36, 430 P.3d at 764 (quoting *Moore v. Lubnau*, 855 P.2d 1245, 1250 (Wyo. 1993)).

[¶26] Mr. Gowdy claimed Dennis failed to comply with the standard of care for a reasonable, careful and prudent lawyer in drafting Ms. Jackson's trust and Mr. Gowdy's estate planning documents. The district court concluded Dennis did not owe Mr. Gowdy a duty when drafting Ms. Jackson's trust. It also ruled Mr. Gowdy had not presented evidence supporting his claim that Dennis breached the standard of care in drafting Mr. Gowdy's estate planning documents. Moreover, the district court concluded it had "not been provided with any evidence of damages that occurred as a result of this alleged malpractice."

[¶27] Mr. Gowdy also claimed the Cooks breached their fiduciary duties to him, including the duty of good faith and fair dealing,[4] in a myriad of ways when drafting and administering the trust. To establish a claim for breach of fiduciary duties, the plaintiff must show a duty based on a fiduciary relationship, breach of the duty, and the breach caused him damage. *Acorn v. Moncecchi,* 2016 WY 124, ¶ 80, 386 P.3d 739, 762 (Wyo. 2016) (citing *LaMonte v. Sanwa Bank California*, 45 Cal.App.4th 509, 52 Cal.Rptr.2d 861, 865 (1996)). The district court ruled there was no evidence the Cooks breached any fiduciary duties owed to Mr. Gowdy. It also concluded that, even if the Cooks violated some fiduciary duty owed to Mr. Gowdy, he failed to present any evidence showing he was damaged by their actions.

[¶28] Because we agree with the district court that Mr. Gowdy failed to present evidence that he was damaged by any of the Cooks' alleged improper actions, we will not address

---

[4] The district court stated "there is not a separate tort claim" based on a breach of the duty of good faith and fair dealing as applied to trusts. Mr. Gowdy does not challenge the district court's statement. Given our decision is based upon the lack of evidence that Mr. Gowdy was damaged, we will not address the reach of the duty of good faith and fair dealing under the circumstances of this case.

7

the other elements of his claims. The Cooks' expert reviewed Mr. Gowdy's claims, his experts' opinions, and the deposition testimony of the witnesses, and concluded there was no evidence of damages from any alleged breaches.[5] This opinion was sufficient to establish a *prima facie* case for summary judgment. *Hatton,* ¶ 9, 148 P.3d at 12-13. The burden, therefore, switched to Mr. Gowdy to present specific evidence of his damages to establish a genuine dispute of material fact for trial. *Id.* Over the course of the litigation, Mr. Gowdy posited various theories of damages. However, Mr. Gowdy's two expert witnesses did not offer any opinions that he or the trust had been damaged by the Cooks' actions.

[¶29] Mr. Gowdy's argument that the district court erred by ruling the Cooks were entitled to summary judgment because of the lack of evidence of damages is very sparse, amounting to a little over one page of his brief.[6] He initially asserts the district court should not have ruled on the damages issue at summary judgment. He claims the court "allowed [his] request that damages be presented at a separate hearing." The part of the record which Mr. Gowdy cites as supporting this statement does not show any such ruling. Mr. Gowdy stated at the summary judgment hearing that he had requested to argue damages at a separate hearing, but the district court never acquiesced to that request. Furthermore, once the Cooks presented a prima facie case for summary judgment, Mr. Gowdy was obligated to "affirmatively set forth material, specific facts in opposition . . . ." *Jones,* ¶ 10, 113 P.3d at 37 (citation and internal quotation marks omitted).

[¶30] Mr. Gowdy next asserts the district court's ruling was incorrect because he *argued* at the summary judgment hearing that his damages included:

> 1. The fees and expenses which were improperly charged to the [t]rust by [the Cooks] while serving in their fiduciary roles; 2. Dennis Cook's denial to pay the fees for an independent attorney to create his estate plan; 3. Cook and Associates, P.C. still being able to serve under the [t]rust when the role was improperly obtained; and 4. [His] attorney's fees to bring this matter as allowed by the Uniform Trust Code.

---

[5] Mr. Gowdy claims the district court abused its discretion by refusing to strike the Cooks' expert testimony that they did not violate the rules of professional conduct. Mr. Gowdy asserts the expert's opinions about the rules were not sufficiently reliable under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). It is unnecessary for us to address this issue because our decision is based upon the lack of evidence that Mr. Gowdy was damaged. As such, her testimony regarding the application of the rules of professional conduct to the Cooks' actions is not at issue.

[6] Mr. Gowdy claims the district court's conclusion that he did not suffer damages was clearly erroneous. The clearly erroneous standard does not apply to summary judgments. The district court found there was no evidence of damages to establish a question of fact for trial on that element of his claims, which is the correct standard for summary judgment.

[¶31] Mr. Gowdy's assertion that summary judgment was inappropriate simply because he made various arguments at the summary judgment hearing does not address whether there were genuine issues of material fact regarding damages. He makes no effort on appeal to show that he presented evidence of his damages to the district court to establish questions of fact for trial. We, therefore, decline to address his contentions because he failed to provide cogent argument, citations to pertinent authority, or citations to the record in support of his claim that the district court should not have granted summary judgment. *See Wright v. State,* 2019 WY 49, ¶¶ 8-9, 440 P.3d 1092, 1094 (Wyo. 2019); *Hodson v. Sturgeon,* 2017 WY 150, ¶¶ 6-8, 406 P.3d 1264, 1265-66 (Wyo. 2017). The absence of evidence on an essential element of each of Mr. Gowdy's claims supports the district court's decision granting summary judgment to the Cooks and was fatal to Mr. Gowdy's motion for summary judgment.[7]

## 2. *Motion for Leave to Amend the Complaint*

[¶32] Mr. Gowdy claims the district court erred by denying his motion for leave to file a second amended complaint. We review a district court's decision on a motion for leave to amend a complaint for abuse of discretion. *Foxley & Co. v. Ellis,* 2009 WY 16, ¶ 32, 201 P.3d 425, 433 (Wyo. 2009); *Askvig v. Wells Fargo Bank Wyoming, N.A.*, 2005 WY 138, ¶ 18, 121 P.3d 783, 788 (Wyo. 2005).

[¶33] Under Wyoming Rule of Civil Procedure 15(a)(2), leave to amend a complaint should be freely given "when justice so requires." The following test is used by trial courts to determine whether to allow an amendment to a complaint:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given.

*Foxley,* ¶ 32, 201 P.3d at 433 (quoting *Beaudoin v. Taylor,* 492 P.2d 966, 970 (Wyo. 1972)) (other citations and internal quotation marks omitted).

[¶34] Mr. Gowdy filed his motion for leave to file a second amended complaint on August 31, 2018, which was after the discovery deadline, less than one month before the summary

---

[7] We have thoroughly reviewed the materials Mr. Gowdy presented during the summary judgment proceedings and found no evidence of the damages he claims here.

judgment hearing, and approximately two and a half months before the scheduled trial date. Mr. Gowdy's proposed second amended complaint added a claim for breach of trust and omitted the negligence claim. The proposed second amended complaint also included allegations that the Cooks' actions were willful and wanton and requested punitive damages. The Cooks objected to Mr. Gowdy's proposed amendment. After discussing the course of proceedings and the specifics of the proposed second amended complaint, the district court denied Mr. Gowdy's motion. It concluded the motion was untimely and the Cooks would be prejudiced if the complaint was amended at that late date.

[¶35] In an apparent attempt to show the amendment would not prejudice the Cooks, Mr. Gowdy asserts in his appellate brief that the amended complaint did not include any new causes of action. He states: "Substantively, the Motion to Amend only requested the inclusion of punitive damages along with the required foundation supporting the request."

[¶36] Taking Mr. Gowdy at his word, we can make short work of this issue. We have already ruled he presented no evidence showing he had suffered any compensatory damages as a result of the Cooks' actions. "Punitive damages cannot be awarded when compensatory damages are not recoverable." *Alexander v. Meduna,* 2002 WY 83, ¶ 40, 47 P.3d 206, 218 (Wyo. 2002) (citing *Bear v. Volunteers of America, Wyoming, Inc.,* 964 P.2d 1245, 1255 (Wyo. 1998), and *Cates v. Barb,* 650 P.2d 1159, 1161 (Wyo. 1982)). Consequently, Mr. Gowdy's amendment to add a claim for punitive damages would have been futile. *See Mantle*, ¶ 85, 437 P.3d at 787-88 (ruling the district court did not abuse its discretion by denying the plaintiffs' request to amend their complaint, in part, because the amendment would have been futile). The district court did not abuse its discretion by denying Mr. Gowdy's motion for leave to file a second amended complaint.

### 2. *No-Contest Provision*

[¶37] Mr. Gowdy claims the district court erred by ruling that he had forfeited his rights as a trust beneficiary under the terms of the no-contest provision. The no-contest provision relied upon by the parties and district court was found in § 13.03 of the restated trust and provided in relevant part:

> The right of a beneficiary to take any interest given to him or her under this trust or any trust created under this trust instrument will be determined as if the beneficiary predeceased [Ms. Jackson] without leaving any surviving descendants if that beneficiary, alone or in conjunction with any other person, engages in any of these actions:
> . . .
> > seeks to obtain adjudication in any court proceeding that [the trust] or any of its provisions is void, or otherwise

> seeks to void, nullify, or set aside [the trust] or any of
> its provisions[.]
>
> . . .
>
> My [t]rustee may defend any violation of this [s]ection at the
> expense of the trust estate.

[¶38]   Dennis, in his capacity as trustee, counterclaimed for enforcement of the no-contest provision when Mr. Gowdy requested that the district court enter a decanted trust removing the requirement that a corporate trustee have assets or insurance coverage of at least one hundred million dollars.[8]  Dennis asserted Mr. Gowdy's proposed change was an attempt to void, nullify or set aside a provision of the trust.  The district court agreed and ruled Mr. Gowdy had forfeited his interest under the trust.

[¶39]   No-contest or *in terrorem* clauses are valid in Wyoming.  *See, e.g., EGW v. First Federal Savings Bank of Sheridan,* 2018 WY 25, ¶ 18, 413 P.3d 106, 110 (Wyo. 2018); *Dainton v. Watson*, 658 P.2d 79, 81 (Wyo. 1983).  The intent of the settlor regarding contests to the trust is controlling.  *EWG,* ¶ 19, 413 P.3d at 111.  Therefore, to resolve this issue, we must interpret the no-contest provision of Ms. Jackson's trust.  Interpretation of a trust agreement is a matter of law, which we review *de novo*.  *Shriners Hospitals for Children v. First Northern Bank of Wyoming,* 2016 WY 51, ¶ 40, 373 P.3d 392, 405-06 (Wyo. 2016) (citing *Forbes v. Forbes,* 2015 WY 13, ¶ 23, 341 P.3d 1041, 1051 (Wyo. 2015)).

> The meaning of a trust is determined by the same rules that govern the interpretation of contracts. In interpreting a trust, our primary purpose is to determine the intent of the settlor. *Wells Fargo Bank Wyoming, N.A. v. Hodder,* 2006 WY 128, ¶ 21, 144 P.3d 401, 409 (Wyo.2006); *First Nat'l Bank & Trust Co. v. Brimmer,* 504 P.2d 1367, 1369 (Wyo.1973). We construe the trust instrument as a whole, attempting to avoid a construction which renders a provision meaningless. *Id.* "We strive to reconcile by reasonable interpretation any provisions which apparently conflict before adopting a construction which would nullify any provision." *Wells Fargo,* ¶ 21, 144 P.3d at 409. *See also, Purcella v. Purcella,* 2011 WY 124, ¶ 14, 258 P.3d 730, 734–35 (Wyo.2011).

*Id.* (quoting *Evans v. Moyer,* 2012 WY 111, ¶ 21, 282 P.3d 1203, 1210 (Wyo. 2012)).

---

[8] The Cooks suggest on appeal that Mr. Gowdy also violated the no-contest provision by proposing a change of his beneficial interest in the home he shared with Ms. Jackson from a "tenancy for his lifetime" to a "life estate."  We will not consider this argument because the Cooks did not present it to the district court and they do not explain the differences between the two estates in their brief to this Court.

[¶40] The no-contest provision of Ms. Jackson's trust is clear and unambiguous. She plainly intended that any beneficiary who attempts to obtain a court ruling voiding, nullifying or setting aside any of the trust provisions forfeits his rights under the trust.

[¶41] Mr. Gowdy claims he was not attempting to change the trust in violation of the no-contest provision. Instead, he was only bringing the action to "correct the breaches of fiduciary duties, breaches of contract, malpractice, and other issues not allowed by Wyoming law and to clarify provisions unclear to the Successor Trustee and sole income beneficiary." His requests to the district court went beyond correcting improprieties committed by the trustee and/or trust protector. He sought to change the qualifications for a corporate fiduciary to serve as successor trustee. Mr. Gowdy does not point to any evidence that the provision was unclear to the successor trustee or present any argument showing his action was brought on behalf of the successor trustee. He did not request clarification of the provision stating the corporate trustee qualifications; he sought to nullify it.

[¶42] Mr. Gowdy also claims that, by enforcing the no-contest provision in this case, the district court did not act consistently with Ms. Jackson's intent. He points to Dennis's testimony that Ms. Jackson wanted a no-contest provision included in the trust to discourage Mr. Gowdy and the other beneficiaries from challenging the others' interests under the trust. Mr. Gowdy claims, therefore, that the no-contest provision should only be enforced if a beneficiary is attempting to change the asset distribution.

[¶43] Mr. Gowdy ignores the clear language of the no-contest provision. The provision is not limited to contests that involve changes to the distribution scheme. It applies to *any* court proceeding seeking to void, nullify, or set aside the trust or *any* of its provisions. "'A trust agreement is governed by the plain language contained in the four corners of the document.'" *EGW*, ¶ 30, 413 P.3d at 115 (quoting *In re Estate of George*, 2011 WY 157, ¶ 65, 265 P.3d 222, 235 (Wyo. 2011)). Under our rules of contract interpretation, which apply equally to trusts, we do not consider evidence of Ms. Jackson's subjective intent. We said in *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC,* 2010 WY 82, ¶ 14, 239 P.3d 382, 387 (Wyo. 2010) (citing *Omohundro v. Sullivan,* 2009 WY 38, ¶ 24, 202 P.3d 1077, 1084 (Wyo. 2009)): "A party's subjective intent . . . is not relevant or admissible in contract interpretation; rather, we use an objective approach to contract interpretation." *See also, Schell v. Scallon,* 2019 WY 11, ¶ 16, 433 P.3d 879, 885 (Wyo. 2019).

[¶44] Finally, Mr. Gowdy suggests he was justified in seeking nullification of the corporate trustee requirements because he had a difficult time finding a corporate trustee which met the strict qualifications so he could exercise his right as income beneficiary to replace Dennis with a new trustee. Again, he ignores that Ms. Jackson's intent controls and that intent is found in the terms of the trust. A settlor is free to incorporate whatever lawful terms she wants into her trust. *Wells Fargo Bank Wyoming, N.A. v. Hodder,* 2006

12

WY 128, ¶ 29, 144 P.3d 401, 411 (Wyo. 2006). Ms. Jackson included strict asset/insurance requirements for corporate trustees in her trust. It took some time, but Mr. Gowdy eventually located a suitable corporate trustee to take over administration of the trust.

[¶45] Mr. Gowdy's argument that his attempt to change the corporate trustee qualifications provision should not trigger the no-contest provision finds no footing in the plain language of the trust. The district court correctly ruled, as a matter of law, that Mr. Gowdy's attempt to remove the corporate trustee qualifications from the trust disqualified him as a beneficiary. Accordingly, the district court properly granted Dennis's motion for summary judgment on his counterclaim and denied Mr. Gowdy's cross-motion for summary judgment.

## CONCLUSION

[¶46] It appears Mr. Gowdy's strategy in this case was to simply point out multiple possible ethical violations committed by the Cooks. A violation of the rules of professional conduct does not, on its own, give rise to a cause of action against a lawyer. Wyoming Rules of Professional Conduct, Scope, Comment 20; *Bevan,* ¶ 62, 42 P.3d at 1032 (simply asserting an attorney's conduct was improper or even immoral is not sufficient to establish a claim for malpractice). Mr. Gowdy was obligated to present evidence of all the elements of his malpractice and breach-of-fiduciary-duties claims, including damages. *Id.* Mr. Gowdy failed to do so, and the district court properly granted summary judgment in favor of the Cooks.

[¶47] The district court did not abuse its discretion by denying Mr. Gowdy's motion for leave to file a second amended complaint. The district court also properly applied the trust's no-contest provision because it clearly and unambiguously stated that a beneficiary would lose his interest if he attempted to void, nullify or set aside any provision of the trust. Mr. Gowdy's attempt to void, nullify and/or set aside the corporate trustee qualifications triggered the no-contest provision.[9]

[¶48] Affirmed.

---

[9] The district court concluded that Dennis and Craig were entitled to recoup from the trust the fees spent defending this action, but their specific request for fees was held in abeyance while this appeal was pending. Mr. Gowdy did not raise an issue regarding that aspect of the district court's order in his opening brief on appeal.