# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 151

### OCTOBER TERM, A.D. 2022

December 1, 2022

AUGUSTINE LOVATO,

Appellant
(Plaintiff),

v.                                                          S-22-0053

TIM CASE,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
The Honorable Catherine R. Rogers, Judge

*Representing Appellant:*
Justin Kallal and Jason Johnson of Davis, Johnson & Kallal, LLC, Cheyenne, Wyoming. Argument by Mr. Kallal.

*Representing Appellee:*
Gay Woodhouse, Christopher M. Brennan, and James O. Bardwell of Woodhouse Roden Ames & Brennan, LLC, Cheyenne, Wyoming. Argument by Mr. Brennan.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     Augustine Lovato sued his co-employee, Tim Case, for running over him with a concrete truck while they were both working on a construction project in Cheyenne.  The district court granted summary judgment to Mr. Case, concluding he was immune from liability because, under Wyoming law, Mr. Lovato's sole remedy was workers' compensation benefits.  Mr. Lovato asserts genuine issues of material fact exist as to whether Mr. Case lost statutory immunity because his actions were willful and wanton.  We affirm.

## ISSUES

[¶2]     We restate the issues for review as:

1.      Did the district court err by ruling that Mr. Case was not responsible for Mr. Lovato's safety and work conditions because he was not Mr. Lovato's supervisor?

2.      Did the district court err by ruling there were no genuine issues of material fact as to whether Mr. Case acted willfully and wantonly?

## FACTS

[¶3]     Mr. Case, Mr. Lovato, and Ricky Bustos were employed by Knife River to work on a construction project at F.E. Warren Air Force Base near Cheyenne.  Mr. Case operated a truck which transported wet concrete to the job site, and Mr. Lovato worked with a crew forming and finishing the wet concrete.  Mr. Bustos was Knife River's foreman on the job and acted in a supervisory role.

[¶4]     Around 10 a.m. on June 19, 2017, Mr. Bustos directed the finishing crew and Mr. Case to move to a new concrete pour site.  Mr. Bustos and Mr. Lovato walked in front of Mr. Case's concrete truck.  Mr. Bustos waved to Mr. Case, signaling him to move the truck forward.  As he drove, Mr. Case felt a bump and thought he had hit a curb or a concrete form with the truck.  In fact, he had run over Mr. Lovato, injuring his foot, leg, back, and shoulder.  Mr. Case said he did not see Mr. Lovato in his truck's path, and he admitted to using his cell phone to call the concrete or "batch" plant and possibly his girlfriend "around the time" of the accident.

[¶5]     Mr. Lovato received benefits for his injuries through the Wyoming Workers' Compensation Act, Wyo. Stat. Ann. §§ 27-14-101 through 27-14-806 (LexisNexis 2021).  He also sued Mr. Case and Mr. Bustos, claiming they were liable as his co-employees "for reckless, willful, wanton and/or reprehensible conduct."  Mr. Bustos settled his dispute with Mr. Lovato and was dismissed from the action.  Mr. Case moved for summary judgment, claiming he was immune from civil liability because his actions were not willful

1

and wanton. The district court granted Mr. Case's motion for summary judgment, and Mr. Lovato appealed. We will provide additional facts in our discussion of the issues, below.

## STANDARD OF REVIEW

[¶6] A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Wyoming Rule of Civil Procedure (W.R.C.P.) 56(a). We review the district court's order granting summary judgment de novo. *Gowdy v. Cook,* 2020 WY 3, ¶ 21, 455 P.3d 1201, 1206-07 (Wyo. 2020) (citing *Bear Peak Res., LLC v. Peak Powder River Res., LLC,* 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017), and *Int'l Ass'n of Fire Fighters, Local Union No. 5058 v. Gillette/Wright/Campbell Cnty. Fire Prot. Jt. Powers Bd.,* 2018 WY 75, ¶ 19, 421 P.3d 1059, 1064 (Wyo. 2018)). We consider the summary judgment motion

> in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

*Id.*, ¶ 21, 455 P.3d at 1207 (citation omitted). "The immunity afforded co-employees under the Workers' Compensation Act in no way alters this standard." *Ramirez v. Brown,* 2020 WY 79, ¶ 12, 466 P.3d 285, 289 (Wyo. 2020).

[¶7] "'The party requesting a summary judgment bears the initial burden of establishing a prima facie case for summary judgment.'" *Gowdy,* ¶ 22, 455 P.3d at 1207 (quoting *Hatton v. Energy Elec. Co.,* 2006 WY 151, ¶ 9, 148 P.3d 8, 12 (Wyo. 2006)) (italics omitted). When the movant "does not have the ultimate burden of persuasion, it establishes a prima facie case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim." *Id.* (citations omitted). After the movant establishes a prima facie case for summary judgment, the burden shifts to the opposing party to present admissible evidence which demonstrates a genuine dispute as to a material fact for trial. *Id.,* ¶ 23, 455 P.3d at 1207 (citing *Hatton*, ¶ 9, 148 P.3d at 12-13). *See also,* W.R.C.P. 56 (c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

## DISCUSSION

[¶8]   Article 10, § 4(c) of the Wyoming Constitution and the Workers' Compensation Act generally provide compensation to employees injured in extrahazardous jobs regardless of fault; in return, employers are immunized from liability for their employees' work-related injuries.   Section 27-14-104(a) extends that immunity to co-employees for ordinary negligence.  "The rights and remedies provided in this act for an employee . . . for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer . . . or their employees acting within the scope of their employment unless the employees intentionally act to cause physical harm or injury to the injured employee[.]" *Id.*

[¶9]   We have interpreted the "intentionally act" language in § 27-14-104(a) to mean willful and wanton misconduct.  *Bertagnolli v. Louderback,* 2003 WY 50, ¶ 15, 67 P.3d 627, 632 (Wyo. 2003).  *See also, Herrera v. Phillipps,* 2014 WY 118, ¶ 18, 334 P.3d 1225, 1230 (Wyo. 2014) (the statutory standard for co-employee liability is the equivalent of willful and wanton misconduct) (citation and quotation marks omitted).

> Willful and wanton misconduct is the intentional doing of an act, or an intentional failure to do an act, in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know that such conduct would, in a high degree of probability, result in harm to another.

*Herrera,* ¶ 18, 334 P.3d at 1230 (citing *Bertagnolli,* ¶ 15, 67 P.3d at 632) (emphasis omitted).

[¶10]  To establish liability under § 27-14-104(a), an injured worker must prove the co-employee he seeks to hold accountable "(1) [had] knowledge of the hazard or serious nature of the risk involved, (2) [was responsible] for the injured [worker's] safety and work conditions, and (3) willful[l]y disregard[ed] the need to act [to protect the injured worker's safety] despite the awareness of the high probability that serious injury or death may result."  *Bertagnolli,* ¶ 16, 67 P.3d at 633.  *See also, Herrera,* ¶ 21, 334 P.3d at 1231 (discussing *Bertagnolli*).   To survive summary judgment, the injured worker must demonstrate a genuine issue of material fact exists as to each of the three elements of willful and wanton misconduct.  *Ramirez,* ¶ 16, 466 P.3d at 290.

[¶11]  The district court concluded Mr. Case was immune from liability under § 27-14-104(a) because: 1) as a non-supervisory co-employee, he bore no responsibility for Mr. Lovato's safety, and 2) the evidence did not demonstrate Mr. Case "was aware his operation of the concrete truck would, with a high degree of probability, result in harm to another."   We conclude the district court was mistaken about Mr. Case's duty to Mr. Lovato, but summary judgment was still appropriate because Mr. Lovato did not present

3

evidence that Mr. Case acted in reckless disregard of a known and highly probable risk to Mr. Lovato.

### *Nonsupervisory Co-employee Duty of Safety*

[¶12]   The district court concluded that, because Mr. Case did not supervise Mr. Lovato's work, he was not responsible for Mr. Lovato's safety and work conditions.  Many of our co-employee liability cases address whether a supervisor can be held responsible for his subordinate's workplace injury when the supervisor was not present at, or immediately involved in, the accident.  For example, in *Ramirez,* the questions were whether Mr. Ramirez's supervisors, who were not directly involved in his workplace accident, had responsibility for his work conditions and whether they willfully disregarded the need to correct known safety hazards associated with the machine he was using when he was injured.  *Ramirez,* ¶¶ 7, 19-23, 44-45, 466 P.3d at 288, 290-91, 296.  In *Hannifan v. Am. Nat'l Bank of Cheyenne,* 2008 WY 65, ¶ 22, 185 P.3d 679, 689 (Wyo. 2008), we concluded there was evidence the co-employees had "direct supervisory authority for [the injured worker's] safety and working conditions the day he was injured" even though they were not present and overseeing the worker when he was injured.

[¶13]   Supervising co-employees do not, however, shoulder the entire legal responsibility for the safety of a worksite.  In *Formisano v. Gaston,* 2011 WY 8, ¶¶ 26-27, 246 P.3d 286, 293 (Wyo. 2011), two co-employees, Mr. Gaston and Mr. Formisano, decided to drive a significant distance home after working a long day at a mine.  *Id.,* ¶¶ 9-12, 246 P.3d 289-90.  Mr. Gaston fell asleep while driving and wrecked the company vehicle.  *Id.,* ¶ 12, 246 P.3d at 290.  Mr. Formisano sued Mr. Gaston to recover for injuries he suffered in the accident.  *Id.,* ¶¶ 1, 12, 246 P.3d at 288, 290.  The district court granted summary judgment to Mr. Gaston because Mr. Formisano did not present evidence to establish a genuine issue of material fact as to whether Mr. Gaston's misconduct was willful and wanton.  *Id.*, ¶¶ 26-28, 246 P.3d at 293.  We agreed with the district court's decision.  *Id.*  However, we also pointed out that Mr. Formisano needlessly "went to great lengths" to show Mr. Gaston was his supervisor.  *Id.,* ¶ 27, 246 P.3d at 293.  We stated that, regardless of Mr. Gaston's supervisory status, Mr. Gaston "owed [Mr.] Formisano a duty of care" because he was driving.  *Id.*  Similarly, in *Van Patten v. Gipson,* 2011 WY 98, ¶¶ 25, 27, 30-31, 253 P.3d 505, 511-12 (Wyo. 2011), we noted that one of the co-employee defendants lacked supervisory status over the injured plaintiff; however, that lack of authority did not necessarily shield him from legal responsibility for workplace safety.

[¶14]   Mr. Case, likewise, owed Mr. Lovato a duty to exercise due care while operating the concrete truck on Knife River's jobsite.  *Cervelli v. Graves,* 661 P.2d 1032, 1038 (Wyo. 1983) ("all drivers are to exercise due care under the circumstances in the operation of their vehicles") (citing *Miller v. Hedderman,* 464 P.2d 544 (Wyo. 1970)).  In general, "[d]rivers must . . . exercise a diligence commensurate with hazards disclosed under surrounding circumstances, and the lookout which . . . is . . . most effective in the light of all present

4

conditions and those reasonably to be anticipated." *Jones v. Schabron,* 2005 WY 65, ¶ 13, 113 P.3d 34, 38 (Wyo. 2005) (citing *Downtown Auto Parts, Inc. v. Toner,* 2004 WY 67, ¶ 6, 91 P.3d 917, 919 (Wyo. 2004), and *Feltner v. Bishop,* 348 P.2d 548, 549-50 (Wyo. 1960)) (some quotation marks omitted). The same is true in work settings. Employers and co-employees have a responsibility to "exercise the care and skill that a person of ordinary prudence would observe under the circumstances." *Ramirez,* ¶ 18, 466 P.3d at 290. The dangers presented by specific work conditions are part of the circumstances considered in determining whether the co-employee exercised ordinary care. *Case v. Goss,* 776 P.2d 188, 192 (Wyo. 1989). This duty applies whether the co-employee supervises other employees or not. Consequently, the district court erred when it ruled Mr. Case was not responsible for Mr. Lovato's workplace safety because he was not Mr. Lovato's supervisor.

### Willful and Wanton Misconduct

[¶15] According to Mr. Lovato, the evidence supports a reasonable inference Mr. Case acted willfully and wantonly by either intentionally running over him or driving while distracted. We can quickly dispatch Mr. Lovato's suggestion there is a question of fact as to whether Mr. Case intentionally ran over him. Mr. Case testified he did not see Mr. Lovato in the truck's path and accidentally ran over him. Adam Grill, an expert in large commercial vehicle operation who testified on Mr. Lovato's behalf, stated he was not aware of any evidence showing Mr. Case intended to run over Mr. Lovato. We agree with Mr. Grill's assessment of the evidence. At most, Mr. Lovato implied Mr. Case may have harbored a secret intent to run over him:

> Q.     . . . So[, do] you think Mr. Case had some ill will against you?
> A.     I don't know. You'd have to ask him that.
> . . . I mean, someone run [sic] me over in a 52,000-pound truck and they [sic] could see me. I have my hard hat with the shovel over my shoulder and a vest on. . . . I had all my protective equipment on.
> Q.     How could he see you?
> A.     I was like 40 feet in front of the truck.
> . . .
> Q.     How tall are you?
> A.     Six foot. . . . I don't understand why, how he hit me anyway. Got a hard hat on, got a bright orange vest on, and then I had a shovel sticking over my shoulder like four feet. That's what I thought to myself, like how does this dude hit someone that's six foot? I don't know how, but we're here.

Mr. Lovato's speculation as to Mr. Case's state of mind was insufficient to establish a question of fact about whether Mr. Case intended to run over him. *Johnston v. Conoco,*

*Inc.,* 758 P.2d 566, 569-70 (Wyo. 1988). *See also, Formisano,* ¶ 4, 246 P.3d at 289 ("'Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact.'" (quoting *Hatton*, ¶ 9, 148 P.3d at 12-13)) (other citations omitted).

[¶16]   Mr. Lovato also asserts he presented evidence of willful and wanton misconduct by showing Mr. Case drove while distracted and failed to keep a proper lookout while driving on a crowded construction site, in clear violation of known safety rules. The district court ruled Mr. Lovato's allegations simply raised the specter of ordinary negligence and did not create a genuine issue of material fact as to whether Mr. Case's conduct was willful and wanton. We agree.

[¶17]   As we explained above, to prove willful and wanton misconduct by a co-employee the injured worker must demonstrate the co-employee knew of a serious risk posed by an unsafe condition and willfully disregarded the need to take action to protect the worker from the risk despite the high likelihood of harm. *Ramirez,* ¶ 16, 466 P.3d at 290 (citing *Bertagnolli*, ¶ 16, 67 P.3d at 633, and *Herrera,* ¶ 21, 334 P.3d at 1231). Generalized knowledge of a possible risk is insufficient to establish the co-worker knew about a hazard. *Id.*, ¶ 25, 466 P.3d at 292 (citing *Vandre v. Kuznia,* 2013 WY 127, ¶ 18, 310 P.3d 919, 923–94 (Wyo. 2013)). Thus, an injured worker cannot establish the particularized knowledge requirement by simply showing his co-employee knowingly violated general safety regulations or standards. *Id.* (citing *Hannifan*, ¶ 7, 185 P.3d at 684; *McKennan v. Newman,* 902 P.2d 1285, 1287-88 (Wyo. 1995); and *Poulos v. HPC, Inc.,* 765 P.2d 364, 366 (Wyo. 1988)).

[¶18]   In *Smith v. Throckmartin,* 893 P.2d 712, 713 (Wyo. 1995), Mr. Throckmartin used a backhoe to load sand into a truck while Mr. Smith stood in the truck and broke up clumps of sand with a metal bar. "During the loading process, the backhoe struck the metal bar Smith was holding, and Smith lost his balance and fell from the sanding truck," suffering serious injuries. *Id.* To establish a genuine issue of material fact as to whether Mr. Throckmartin knew the procedure was inherently dangerous and highly probable to cause harm, Mr. Smith presented evidence showing Mr. Throckmartin knowingly violated their employer's safety standards. *Id.* at 715. We stated, "[w]hile these asserted violations may constitute evidence of ordinary negligence, they do not demonstrate a state of mind consistent with culpable negligence, which requires knowledge or obviousness of a high probability of harm." *Id.* at 716 (quoting *Poulos,* 765 P.2d at 366) (emphasis omitted). Mr. Smith, Mr. Throckmartin, and other employees had performed the same procedure many times without any problems, which demonstrated it was not highly likely to cause harm. *Id.* at 715 (citing *Bryant v. Hornbuckle,* 728 P.2d 1132, 1136 (Wyo. 1986)).

[¶19]   Mr. Vandre was injured when an asphalt paving machine driven by one of his co-employees hit him as he walked along the shoulder of a road. *Vandre,* ¶¶ 3-9, 310 P.3d at 920-21. He sued the co-employees who decided to move the machine. *Id.* Although the

co-employees were aware there was a potentially dangerous "blind spot" in front of the machine when it was being moved, they did not take any precautions to mitigate the dangerous condition. *Id.,* ¶¶ 5-6, 18, 310 P.3d at 921, 923-24. We held that although the co-employees' conduct could be considered negligent, it "[did] not rise to the level of willful misconduct." *Id.,* ¶ 18, 310 P.3d at 923-24.

> [T]he risk that someone would be hit by the paver during mobilization was a mere possibility that had never happened before. The danger involved in driving the paver was not obvious and the risk of [Mr.] Vandre's injuries were not highly probable. Simply put, the co-employee[s'] . . . actions were not an extreme departure from ordinary care in a situation where a high degree of danger was apparent.

*Id. See also, Formisano,* ¶ 26, 246 P.3d at 293 ("While there certainly was some possibility of Gaston falling asleep and causing an accident, we cannot say . . . these circumstances were such that a reasonable person would know, or have reason to know, that such conduct would, in a high degree of probability, result in harm to another.").

[¶20] In *Poulos,* 765 P.2d at 365, Mr. Poulos died after inhaling toxic fumes while cleaning tanks at an oil well site. His estate sued his co-employees for wrongful death. *Id.* at 365-66. We held that some of the co-employee defendants were immune from liability because, although they were generally aware of the risk to workers from exposure to toxic fumes and the safety rules designed to minimize that risk, there was no evidence they knew of the particular danger Mr. Poulos faced on the day he died. *Id.* at 366. However, there were genuine issues of material fact as to whether the on-site supervisor could be found culpably negligent. *Id.* at 366-67. The supervisor testified he had personally entered the tanks prior to Mr. Poulos' deadly exposure and the fumes made him feel "worse than drunk." *Id.* at 367. Despite this experience, he allowed Mr. Poulos to work in the tank without taking "steps to ensure [Mr.] Poulos' safety." *Id.* We reversed the district court's order granting summary judgment to the supervisor, stating the "trier of fact could reasonably find a known or obvious risk presenting a high probability of harm." *Id.*

[¶21] When compared to our precedent, Mr. Lovato's summary judgment evidence does not establish a genuine issue of material fact as to whether, under the circumstances, Mr. Case was aware his actions were highly likely to result in harm to co-employees. Mr. Grill opined the accident was preventable and Mr. Case ran over Mr. Lovato because he was inattentive. According to Mr. Grill, Mr. Case violated industry standards for safely operating a commercial motor vehicle by failing to keep a proper lookout for pedestrians and maintain a safe distance between the vehicle and pedestrians. Mr. Grill also stated Mr. Case failed to clear the area before he started moving by getting out of the truck and looking around or signaling his intent to move by honking the horn, flashing the lights, or yelling.

7

A representative for Knife River testified company policy required concrete truck drivers to utilize hands-free devices when using cell phones.

[¶22] The evidence demonstrated Mr. Case, through his training and experience, was generally aware driving while distracted and failing to keep a proper lookout on a job site violated safety rules. He learned the "cardinal" safety rule to avoid distracted driving through his commercial driver license (CDL) training and specific on-the-job training with Knife River. He also acknowledged the safety rules were mandatory because they protected "people [from getting] hurt." Mr. Case stated he did not see Mr. Lovato when he looked out of the windshield and checked his mirrors, but he did not get out of his truck to clear the area or signal his intent before he moved the truck. Mr. Case also admitted he kept his cell phone in his pocket while he worked, and it was set to vibrate when he received a call, text, or email. This testimony indicated Mr. Case did not use a hands-free device. Mr. Lovato asserts the evidence shows Mr. Case was talking on his cell phone when he ran over Mr. Lovato. The record is not clear on that fact;[1] however, we consider the evidence in Mr. Lovato's favor on summary judgment. Thus, we will assume Mr. Case violated known safety rules by failing to properly look out for Mr. Lovato and by talking on his cell phone without using a hands-free device.

[¶23] This evidence could certainly support a conclusion Mr. Case was negligent. *See, e.g., Downtown Auto Parts,* ¶ 6, 91 P.3d at 919-20 (a driver acts negligently if he fails to keep a lookout commensurate with the surrounding circumstances) (citation omitted); *Blakeman v. Gopp,* 364 P.2d 986, 988-89 (Wyo. 1961) (the duty of reasonable or ordinary care requires a driver to maintain a safe distance from pedestrians or bicyclists). As we said in *Smith* and *Poulos,* violations of safety standards "may constitute evidence of ordinary negligence[;]" however, "they do not demonstrate a state of mind consistent with" co-employee liability, "which requires knowledge or obviousness of a high probability of harm." *Smith,* 893 P.2d at 715-16 (quoting *Poulos,* 765 P.2d at 366) (emphasis omitted).

[¶24] To establish Mr. Case was liable under § 27-14-104(a), Mr. Lovato was required to present evidence showing Mr. Case knew, or had reason to know, it was highly probable

---

[1] Mr. Case testified he did not know the "exact time" of the accident but agreed it was "around 10:50 in the morning." His cell phone record shows he made three calls during the relevant time frame – at 10:48, 10:50, and 10:59 a.m. In response to Mr. Lovato's attorney's questions about the 10:50 and 10:59 calls, Mr. Case testified he made those calls after the accident to the batch plant and his girlfriend, respectively. Mr. Lovato asserted in his summary judgment memorandum that Mr. Case "made two calls in a matter of minutes to the batch plant." Presumably, the 10:48 call would have been the first of those batch plant calls. In a supplemental memorandum, Mr. Lovato submitted 911 call records which showed Mr. Bustos called 911 at 10:48 a.m. Mr. Lovato claimed the 911 call records proved Mr. Case was on his phone when he ran over Mr. Lovato. The district court refused to consider Mr. Lovato's supplemental memorandum because he was late filing it. Consequently, we do not include the information from that filing in our review of the district court's summary judgment decision. Nevertheless, we note that the fact Mr. Case made a call at 10:48 does not show he was on the phone when the accident occurred. The accident clearly occurred prior to 10:48 because that is when Mr. Bustos called 911.

his actions would result in harm to another. Mr. Lovato's, Mr. Case's, and Mr. Bustos' testimony showed drivers routinely operated concrete trucks around pedestrians on job sites with no problems. Mr. Case was following Mr. Bustos' hand signals to move the truck forward when he ran over Mr. Lovato. He was driving slowly, and it was only a short distance to the location of the next pour. Mr. Case stated he usually carried his cell phone in his pocket while he operated the concrete truck on job sites, but there is no evidence he had been involved in any other accidents while doing so. Mr. Lovato failed to establish a genuine issue of material fact as to whether Mr. Case was aware, or should have been aware, his conduct under these circumstances was highly likely to result in harm. The district court, therefore, properly granted summary judgment in Mr. Case's favor.

## CONCLUSION

[¶25] The district court incorrectly ruled that Mr. Case, as a non-supervisory co-employee, had no responsibility for Mr. Lovato's safety on the job site. However, it correctly ruled Mr. Lovato did not present evidence showing Mr. Case knew his actions presented a serious risk to Mr. Lovato or it was highly probable harm would result if he disregarded the risk.

[¶26] We affirm the district court's summary judgment in favor Mr. Case.